ELIZA M. VAWTER *vs.* AMASA CRAFTS.

June 4, 1889.

**Mortgage—Covenant for Partial Releases as Lots should be Sold— Rights of Purchasers.**—A mortgage upon a tract of land, to secure payment of a sum of money at certain dates, contained an agreement that the mortgagor should plat the land into 100 lots, of uniform size, and that the mortgagee should release any of the lots when thus platted, upon payment of a specified sum for each lot. The mortgage also contained the usual condition that, in case of default in any of the covenants or conditions of the mortgage, the mortgagee might sell the mortgaged premises, and out of the proceeds retain the amount due on the mortgage. *Held,* that the covenant as to partial releases ran with the land, and inured to the benefit of the grantee of the mortgagor, who purchased one of the lots into which the land was platted; also that the right to a release was not terminated by a default in the payment of the sum secured by the mortgage, but continued in force until the mortgagee had fully executed the power by sale of the mortgaged premises.

Appeal by plaintiff from a judgment of the district court for Hennepin county, where the action was tried by *Young, J.*

*Little & Nunn,* for appellant.

*Julius E. Miner,* for respondent.

MITCHELL, J. This appeal presents the following state of facts: Monroe Bros. and Foster, the owners of a 20-acre tract of land, on February 25, 1882, executed a mortgage on it to defendant for the payment of $11,250, as follows: $3,250 on or before three years, $4,000 on or before four years, and $4,000 five years from date, and interest thereon according to the conditions of three promissory notes. The mortgage contained the usual provision that, if default should be made in the payment of said sum or interest, or any part thereof, at the times specified, the mortgagee was authorized to sell the mortgaged premises agreeably to the statute, and out of the proceeds retain the principal and interest due on said notes, and all taxes on the land, together with costs and charges, etc., and pay the overplus, if any, to the mortgagors. It also contained the following provision: "It is understood and agreed by and between the parties to this instrument that the above-described land shall be platted into not less

than one hundred lots, of uniform size, and that the party of the second part shall release any of the lots in the north half of said land upon the payment of $140 each, and any of the lots, when platted as aforesaid, in the south half of said land, upon payment of $85 for each lot." In accordance with this agreement, the mortgagors platted the land into one hundred lots, and afterwards, from time to time, the larger part of the lots were released, until, on July 16, 1888, there remained unreleased only eight lots, including the two then and now owned by plaintiff; and there remained due on the mortgage a balance of $1,215 for principal, interest, and taxes. The plaintiff acquired her two lots (which are in the south half of the land) through conveyances from the mortgagors, at what time does not appear, except that it was prior to July 16, 1888. Default having been made in the mortgage, defendant, on the date last named, proceeded to foreclose under the power, and advertised all the unreleased lots (including plaintiff's) for sale on September 10th. On the 4th day of September plaintiff tendered defendant the sum of $170, with interest and costs of foreclosure proceedings, amounting in all to $261, and demanded a release of her lots. This the defendant refused to give, unless she paid the whole amount due on the mortgage; whereupon plaintiff brought this action to compel a release, offering to pay therefor $170, and such further sum as the court might find due on the lots.

The case turns entirely upon the force and effect to be given to this agreement regarding partial releases. It must be conceded at the outset that this mortgage is not the same in all respects as those considered in *Hull* v. *King,* 38 Minn. 349, (37 N. W. Rep. 792,) and *Mason* v. *Goodnow, supra,* p. 9, (decided at the present term.) It is a single mortgage on the whole tract, to secure the full sum of $11,250, but with the privilege or right to the mortgagors, after platting the land, to have any lot released upon payment of a specified sum, which, it will be observed, is so fixed that the aggregate on the 100 lots would exactly equal $11,250, the principal sum secured by the mortgage.

1. Defendant's first contention is that this covenant as to releases is a purely personal one with the mortgagors, and did not pass with the

land to their grantees. Much abstruse and technical learning has been wasted in discussing the question what are and what are not covenants running with the land. But we think it will be found, by considering the principle underlying the subject, that, according to the best-considered modern authorities, the law corresponds with common sense, and annexes a covenant to the land when the subject of it is something to be done or refrained from, about or touching, concerning or affecting, the covenantee's land, (though not upon it,) which would benefit the same, or increase its value in the hands of the holder. *Shaber* v. *St. Paul Water Co.*, 30 Minn. 179, (14 N. W. Rep. 874.) It is not necessary here to enter into a consideration of the distinction in certain respects that may exist between a transfer of the burden of a covenant running with the land and of the benefit of the covenant; in other words, of the liability to fulfil the covenant, and of the right to exact its performance. The rule, we think, is universal that the benefit passes with the land to which it is incident. In the case at bar the agreement or covenant is one relating to the rights of the parties in the land. It affects the title, and hence affects the value of the estate of the holder. The release is for the benefit of the owner; in fact, no one but the owner could be benefited by it. It would be against reason if it did not inure to the grantee of the covenantee. This provision was manifestly inserted in the mortgage with reference to the sale of these lots, when platted, to different parties, and to facilitate such sales. These sales could be made in two ways—*First*, by the mortgagors paying the sum or sums stipulated, and obtaining a release, and then conveying clear title to the purchaser; or, *second*, selling subject to the mortgage, and leaving it to the purchaser to pay and obtain the release. It is argued, from the fact that the covenant does not contain the words "or assigns," it was intended as a personal one with the mortgagors. We do not think this fact is entitled to any weight. The question must be determined from the nature and subject-matter of the covenant itself.

2. It is claimed, however, that this agreement to give releases is conditioned upon performance by the mortgagors of all the covenants and conditions of the mortgage, and that, as default had

been made in these, the right to demand a partial release no longer existed. There is certainly no express provision to this effect. By its terms the covenant is unconditional. If there is any such condition, it must be implied from other provisions in the mortgage. The covenant is not °in its nature necessarily dependent on any other covenant or condition in the instrument. The fact that two of the notes secured by the mortgage were payable at any time, at the option of the mortgagors, is so equivocal as to its purpose that it has no special bearing upon the question. Neither is there any special significance in the fact that, in fixing the sum or sums to be paid for the release, no provision is made for interest. The difficulty, if any, would apply equally in case of releases called for before a default, for the notes bore interest from date. As the amounts were fixed so as to exactly equal in the aggregate the principal of the mortgage debt, we think it would be implied that in each case each lot should pay accrued interest on its proportionate share of the debt. If this be not so, then all there is of it is that defendant made a contract by which he might be compelled to release all the security without receiving payment of accrued interest. The provisions of the mortgage as to foreclosure and sale of the mortgaged premises, in case of default, do not support defendant's construction of the covenant. They are to be construed in connection with that covenant, and as qualified by it. So construed, there is no inconsistency between them. Reference is made to the supposed injustice and unreasonableness of construing the covenant as requiring the mortgagee to execute a partial release after there had been default in the conditions of the mortgage, and interest had accrued, and perhaps expenses incurred in commencing foreclosure proceedings. But we cannot see sufficient force in this to warrant attaching by implication a condition or limitation to the covenant. If the mortgagee is paid the proportionate share of the accrued interest, and reimbursed for his expenses, we do not see how he can be prejudiced. His remaining security would be just as ample as if the release had been demanded before default, and, in case foreclosure proceedings had been commenced, they would not be defeated or affected, as to the remaining lots, by the execution of a partial release. On the other

hand, a contrary construction might work harshly against purchasers from the mortgagors, and defeat the very purpose for which the covenant was inserted. Suppose a party had, before the maturity of a mortgage, purchased a lot subject to it, and relying on his right to get a release on payment of a stipulated ·sum, and, without any personal default on his part, and without his knowledge, the mortgagor should default in payment of taxes on some of the other lots. According to the contention of defendant, the right of the purchaser to a release would have absolutely terminated, and he could then save his property only by paying the whole sum secured by the mortgage. Construing this covenant in connection with the other provisions of the mortgage, and in the light of the manifest purpose which it was designed to subserve, we are of the opinion that the right to a partial release upon the stipulated terms continues until the mortgagee has fully executed the power by sale of the mortgaged premises. See *Clark* v. *Fontain*, 135 Mass. 464, 144 Mass. 287, (10 N. E. Rep. 831.) It is therefore ordered that the cause be remanded, with directions to the district court to render judgment compelling defendant to execute a release upon payment of the sum of $170, and all accrued interest thereon, together with the costs of the foreclosure proceedings.

Ordered accordingly.