Argued and submitted April 21, decided May 23, 1911.

## SCOTT v. SMITH.

[115 Pac. 969.]

MORTGAGES—RELEASE—REINSTATEMENT.

1. A purchaser of incumbered land contracted to purchase before the mortgage was released. He did not pay any part of the price after the release on the faith thereof. The mortgage was released by mistake. *Held*, that the mortgagee was entitled to a reinstatement of the mortgage as against the purchaser.

MORTGAGES—CONSTRUCTION—APPORTIONMENT OF MORTGAGE DEBT.

2. A mortgage of 400 acres, stipulating that, in case the mortgagor shall sell any part thereof and turn over, to the mortgagee, cash or notes received from the purchaser, such an amount per acre as is agreed to by both parties, not to exceed an average on the whole tract of $23.75 per acre, the mortgagee will relinquish from the mortgage the part so sold, makes an apportionment of the mortgage so that a lien of $23.75 of the principal thereof is created on each acre of the land in the mortgage, and a purchaser of a parcel, who pays at least $23.75 per acre, is entitled to a discharge of the mortgage on the part purchased.

MORTGAGES—CONSTRUCTION—APPORTIONMENT OF MORTGAGE DEBT.

3. An agreement by a mortgagee for the apportionment of the debt is valid and enforceable on a strict compliance with the conditions thereof, and the right inures to the benefit of a grantee of a part of the mortgaged land, though not to a purchaser of the premises at an execution sale.

MORTGAGES—CONSTRUCTION—APPORTIONMENT OF MORTGAGE DEBT.

4. Where a mortgage contains no stipulation for the apportionment of the debt, and the debt secured is not in any way apportioned, and

the mortgagor with the knowledge of the mortgagee sells a part of the premises to a third person and receives payment thereof, the mortgagee must not release any part of the property remaining, and, where he does so, the purchaser may insist on a credit on the mortgage of a sum equal to the value of the property released.

MORTGAGES—CONSTRUCTION—APPORTIONMENT OF MORTGAGE DEBT.

5. Where a mortgagor and his assigns have a right under the mortgage, on the payment of a specified sum per acre, to have any part of the mortgaged premises released, each purchaser from the mortgagor buys subject to that provision, and, where he fails to procure a release from the mortgagee of the part purchased according to the conditions of the mortgage, no part of the money paid for other portions may be applied toward a discharge of the mortgage debt *pro tanto,* as against the part purchased by him.

MORTGAGES—CONSTRUCTION—APPORTIONMENT OF MORTGAGE DEBT.

6. Where a mortgage securing a note bearing interest from its date provided for a release of any part of the mortgaged premises on the payment of a specified sum, the mortgagee was not required to release a part on the payment of the specified sum without interest from the date of the note.

APPEAL AND ERROR—FINDINGS—REVIEW.

7. Where the evidence is not in the record, the court on appeal will not review the findings, but they will stand.

APPEAL AND ERROR—DISPOSITION OF CASE ON APPEAL.

8. Where it does not appear, either from the record on appeal or from the briefs or arguments of counsel, that a different state of facts would be made from those found by the trial court if the case was remanded, the Supreme Court will not remand the case, but will render the proper judgment.

VENDOR AND PURCHASER—FORFEITURE OF RIGHTS OF PURCHASER—
    OBLIGATION OF VENDOR.

9. The failure of a purchaser to pay the price on the date fixed in the contract does not produce a forfeiture unless time is of the essence; but the vendor must tender a deed and demand performance.

MORTGAGES—APPORTIONMENT—LIABILITY OF RESPECTIVE PURCHASERS.

10. Where a mortgage apportioned the debt, parcels purchased should not be burdened with the principal of or interest on the mortgage debt apportioned to other parcels.

From Marion: WILLIAM GALLOWAY, Judge.

Statement by MR. JUSTICE BEAN.

This is a suit to foreclose a mortgage on lots 39 and 40 of Sunnyside Fruit Farm No. 10, in Marion County, Oregon, by Chas. Scott, as assignee of the Oregon Land Company, an insolvent corporation, against D. M. Smith,

Herma Smith, Virginia Watson, E. E. Barnett, Robert McGilchrist, Albert Smith, J. K. Smith, Cora Smith, Frank E. Smith, Lois Jory, J. N. Smith, and P. W. Raidabaugh. One of the defendants seeks to have a prior mortgage reinstated and foreclosed, and another asks for the specific performance of a contract for sale.

On February 1, 1892, the Oregon Land Company, a corporation, purchased from defendant Virginia Watson and her husband, James F. Watson, a farm of 400 acres in Marion County, Oregon, executing, to secure part payment thereon, a note and mortgage for $9,500, due February 1, 1900, with interest at 8 per cent. This mortgage, which was duly recorded, contained, in addition to the usual covenants, the following stipulation:

"It is hereby agreed and understood that the payment as hereinbefore specified may be made (in case any part of the above land is sold by the Oregon Land Company) by turning over to Virginia Watson cash or note or notes and mortgage received from the purchaser to such an amount per acre as is agreed to by both parties, not to exceed an average on the whole tract of twenty-three dollars and seventy-five cents per acre. Said note or notes and mortgage so received from the purchaser to draw 8 per cent interest per annum, and to be payable on or before February 1, 1900, and on receipt of cash or note, or notes and mortgage as above the land represented by the same is to be released from the operation of this mortgage and the Oregon Land Company is to receive credit on its note for said amount."

While the note set forth in the mortgage also provided that payment could be made in accordance with the conditions stated therein. The land was afterward divided into lots of about ten acres each; various lots being sold from time to time and released from the mortgage, a portion thereof at the rate of $18 per acre, until all the lots except those in question were so released.

On July 17, 1895, the Oregon Land Company, having previously executed a contract for one lot to defendant

Raidabaugh, upon which certain payments had been made, canceled the same, and, upon the sale to him of another lot, executed a new contract of sale, covering lots 39 and 40, for the agreed price of $3,596.55, $1,877.30 of which was acknowledged in the contract to have been paid; the balance of $1,719.25 to be paid on different dates, partly in advertising and partly in cash. In accordance therewith, certain payments were made from time to time, until on December 2, 1903, there remained unpaid the sum of $482.53. On July 29, 1897, the land company, having become financially involved, conveyed lots 39 and 40 to defendant D. M. Smith, then and for some time previously the company's assistant secretary. Smith, for the purpose of securing a release of these lots from the mortgage of defendant Watson, and for no other purpose, as he alleges, executed to the land company a note and mortgage for the sum of $360 on the two lots. The note and mortgage were never transferred to Virginia Watson. Subsequently D. M. Smith and wife, by quit-claim deed, conveyed the lots to Abe Smith, who, together with his wife, Martha, conveyed lot 39 by quit-claim deed to E. E. Barnett and A. J. Barnett, his wife, and the last named on December 21, 1905, since the commencement of this suit, conveyed lot 39 to defendants Robert McGilchrist and Belle McGilchrist.

In March, 1898, the Oregon Land Company made an assignment for the benefit of its creditors to plaintiff, Charles Scott, and the note and mortgage of D. M. Smith to the land company, coming into Scott's hands, as such assignee, on the 6th day of March, 1903, he commenced suit to foreclose the mortgage.

Defendant Virgina Watson, answering plaintiff's complaint, denies the parts material to her defense, and affirmatively alleges that she held the first mortgage executed to her, as above mentioned, upon the real property in question; that various payments had been made

upon the note secured by such mortgage, until on March 4, 1911, there was due thereon as principal and interest about $2,814.90, the only security for which was the real property described. Mrs. Watson further alleges that lots 39 and 40 were released from the mortgage by mistake, without carelessness on her part, and that the parties taking title to the property since the date of release took the same with knowledge of the mistake, were not purchasers in good faith or for valuable consideration, or without notice, and she prays that the release be canceled; that the mortgage be reinstated; and that it be foreclosed for the total amount due and unpaid on the note, together with reasonable attorney's fees.

Defendant D. M. Smith and others interested with him, answering, deny some of the allegations of the complaint, and set forth the stipulation in Mrs. Watson's mortgage for the release of lots sold by the company, and the deed by the company to defendant D. M. Smith of July 29, 1897, the execution of the mortgage of $360 in favor of the Oregon Land Company, which was intended to be transferred to Mrs. Watson for the purpose of releasing the lots from her mortgage. Smith asserts he was not indebted to the Oregon Land Company in any sum; further asserting the failure of the Oregon Land Company to deliver the note and mortgage to Mrs. Watson; that defendants Abe Smith and wife and E. L. Barnett and wife purchased said lots on the faith of the satisfaction of the mortgage of Mrs. Watson, which satisfaction of mortgage is alleged to be a mistake; and that they are *bona fide* purchasers for value.

Defendant Raidabaugh, in addition to the statement already made concerning his contract, claims by his answer that the balance due on December 2, 1903, after making various payments, was $482.53, and that the Oregon Land Company agreed, upon his compliance with

the conditions of the contract, to execute and deliver to him a good and sufficient warranty deed to the lots. It is further alleged, and also found by the trial court, that Raidabaugh is now, and at all times mentioned has been, ready, willing, and able, upon the execution and delivery to him of the deed, to pay the amount due on his contract; that all of the defendants interested had full knowledge and notice of the insolvency of the Oregon Land Company; that, with full knowledge and notice of such fact, all the payments made by Raidabaugh were received; that the deeds to D. M. Smith and to the other defendants were made with the full and complete knowledge and notice of the existence of Raidabaugh's contract and his interest in the premises, without any consideration therefor, and their interest in the lots is inferior to that of defendant Raidabaugh; that Raidabaugh has not paid the amount due upon his contract, for the reason that the land company, and all the other defendants, have at all times been and are unable to perform any of the conditions on their part of the contract. In 1903 Raidabaugh tendered to the assignee the full amount of principal and interest then due upon his contract, and demanded a deed, as therein provided, which deed was refused.

The different parties filed replies, putting in issue the material allegations of the several answers. From a decree, reinstating Virginia Watson's mortgage, and providing for a conveyance to defendant Raidabaugh of the lots, upon the payment of $475 and attorney's fees of $50, all the parties appeal, except defendant Raidabaugh.

MODIFIED.

For appellant, Chas. Scott, there was a brief and an oral argument by *Mr. William H. Holmes.*

For appellant, Virginia Watson, there was a brief and an oral argument by *Mr. Robert G. Morrow.*

For appellants, D. M. Smith, Herma Smith, E. E. Barnett, Robert McGilchrist, Albert Smith, J. K. Smith, Cora Smith, Frank E. Smith, Lois Jory and J. N. Smith, there was a brief and an oral argument by *Mr. George G. Bingham.*

For respondent, P. W. Raidabaugh, there was a brief with oral arguments by *Mr. William M. Kaiser* and *Mr. Charles L. McNary.*

Mr. Justice Bean delivered the opinion of the court.

1. From the testimony of Robert G. Morrow, then acting as attorney and agent for defendant Virginia Watson, it appears to have been a custom, when a sale was made by the Oregon Land Company, for Mrs. Watson to execute a blank release of her mortgage thereon; this was done in many instances. A printed form of such release was prepared, which would be signed by Mrs. Watson, and then forwarded to Charles Scott, who would insert the description of the particular lot sold. At one time a release so executed was forwarded to Scott, who by some oversight failed to add the description of the property to be released, and this was not known by the mortgagee or her agent for a long time. About 1901 Mr. Morrow was informed by defendant D. M. Smith that the mortgage had been fully released, which upon subsequent investigation he found to so appear of record. This is corroborated by the testimony of Charles Scott. Raidabaugh purchased his land long before the mortgage of Mrs. Watson was released, and it does not appear that he has paid any amount on his contract to the Oregon Land Company, or to any one, since the release of the mortgage was placed of record on account of such release by Mrs. Watson. The trial court found in effect that the mortgage of Virginia Watson, as to the two lots in question, was released by mistake, and without fault on the part of the mortgagee, and all of the other defendants

had notice and knew that the lots were subject to Mrs. Watson's mortgage. From an examination of all the evidence, we think this finding was correct, and that the mortgage of defendant Virginia Watson should be reinstated. *Pearce* v. *Buell,* 22 Or. 29 (29 Pac. 78) ; *Kern* v. *Hotaling,* 27 Or. 205 (40 Pac. 168: 50 Am. Rep. 710) ; *Capital Lumbering Co.* v. *Ryan,* 34 Or. 73 (54 Pac. 1093) ; *Title Guarantee Co.* v. *Wrenn,* 35 Or. 62, 75 (56 Pac. 271: 76 Am. St. Rep. 454).

2. In determining the rights of the parties, much depends upon the construction to be given to the stipulation in the mortgage of defendant Watson, as to relinquishing the mortgage in case part of the land should be sold. As we view it, this in effect made an apportionment of the mortgage, so that a lien of $23.75 of the principal thereof was created on each acre of the land included in the mortgage. It was evidently the intention of the parties that the land should be platted and subdivided into lots, as was done; and this provision undoubtedly was made in order that the respective purchasers of the different lots might, by an inspection of the records, inform themselves as to what part of the mortgage constituted a lien thereon. While the stipulation provides that, in order to have a portion of the land released, such "an amount per acre as is agreed to by both parties, not to exceed an average on the whole tract of $23.75 per acre," be paid in cash, or notes and mortgages to Mrs. Watson, it was intended that, if an amount less than the average should be so paid upon a lot or lots, other amounts greater than the average should be paid at the same time, or previously, so that in the aggregate they would equal $23.75 per acre. It is obvious that the $23.75 mentioned in the stipulation was not for the purpose of limiting the total sum to be so paid; that would be wholly unnecessary, as the note and mortgage showed the amount in full. This provision was inserted for the

purpose of informing the mortgagor, and any person who might purchase from the mortgagor, the amount required to be paid for a release of the mortgage upon a lot or portion of the land. Any other meaning would render nugatory the clause "not to exceed an average on the whole tract of $23.75 per acre." It is claimed by counsel, on behalf of defendant Watson, that the stipulation in the mortgage, as to the apportionment of the debt to the different lots, when sold, is effective only as between the mortgagor and the mortgagee. We do not think this point is well taken. A similar claim was made in the case of *Barge* v. *Klausman,* 42 Minn. 281 (44 N. W. 69), where it was held otherwise; that the effect of such a condition in a mortgage was to divide the original debt, so that the several sums specified might be paid separately by the mortgagor or his assigns, in order to secure a discharge of such incumbrances. See, also, *Weber* v. *O'Neil,* 10 Grant. Ch. 440, and *Andreas* v. *Hubbard,* 50 Conn. 351.

3. A mortgagee may consent to the apportionment of the debt, and such an agreement, upon a strict compliance with the conditions thereof, is valid and enforceable. This right inures to the benefit of the grantee of a part of the mortgaged land, although not to a purchaser of the premises at an execution sale. 27 Cyc. 1365, 1415.

4. When a mortgage contains no such stipulation, and the debt secured is not in any way apportioned, and the mortgagor, with the mortgagee's knowledge, has, subsequent to the mortgage, sold part of the property to another and received payment therefor, the mortgagee must not release any part of the property remaining. In the event of his so doing the purchaser may insist upon a credit on the mortgage of a sum equal to the value of the property released. 27 Cyc. 1397.

5. Where, according to the conditions of a mortgage, the mortgagor and his assigns have the right, upon the

payment of a certain sum per acre, to have any portion of the mortgaged premises released, each purchaser from the mortgagor buys subject to that provision, and, if he fails to procure a release from the mortgagee of the part purchased, according to the conditions of the mortgage, no part of the money paid for other portions can be applied toward a discharge of the mortgage debt *pro tanto,* as against the part purchased by him. *Hawhe* v. *Snydaker,* 86 Ill. 197, 207. *Vawter* v. *Crafts,* 41 Minn. 14 (42 N. W. 483), involved a mortgage upon a tract of land to secure the payment of a sum of money at certain dates, in which mortgage there was the following provision:

"It is understood and agreed by and between the parties to this instrument that the above-described land shall be platted into not less than one hundred lots, of uniform size, and that the party of the second part shall release any of the lots in the north half of said land upon the payment of $140 each, and any of the lots, when platted as aforesaid, in the south half of said land, upon payment of $85 for each lot."

In this case it was determined that the covenant, as to a partial release, ran with the land and inured to the benefit of the grantee of the mortgagor purchasing one of the lots so platted; that the right to a release was not terminated by default in payment of the sum secured by the mortgage, but continued in force until the mortgagee had fully executed the power by sale of the mortgaged premises. In discussing this case, Mr. Justice MITCHELL, speaking for the court, declared: "The rule, we think, is universal that the benefit passes with the land to which it is incident. * * The agreement or covenant is one relating to the rights of the parties in the land. It affects the title, and hence affects the value of the estate of the holder. The release is for the benefit of the owner; in fact, no one but the owner could be benefited by it. It would be against reason if it did not inure to the

grantee of the covenantee." In considering this question, it should be noted that the amount mentioned in the stipulation, to be paid per acre, is so fixed as to equal in the aggregate the principal of the note secured by the mortgage. Under a similar stipulation in *Clark* v. *Fontain,* 144 Mass. 287 (10 N. E. 831), it was held that the purchaser from a mortgagor, on paying the price mentioned in the mortgage, was entitled to a release of his lot, and that in a suit in equity such a stipulation should be enforced in favor of one holding under a mortgagor. Defendant Raidabaugh, having purchased the lots from the Oregon Land Company, obtained a contract therefor and taken possession thereof, a court of equity will decree him a deed from one holding from the vendor, with notice of his equities in the premises, upon payment of the amount stipulated in the mortgage. *Cowen* v. *Loomis,* 91 Ill. 132.

6. On behalf of the defendant Raidabaugh, it is claimed that upon his payment without interest of the amount of $23.75 per acre, or $475, he is entitled to a release from defendant Virginia Watson's mortgage. The stipulation is not perfectly clear in its terms in regard to the payment of interest. There is, however, a provision that notes and mortgages received from purchasers, to be transferred to Mrs. Watson, should draw interest at 8 per cent per annum, and be payable on or before February 1, 1900; but the time from which interest accrues is not stated in the stipulation, and this appears to be unnecessary for the reason that the note, set forth in the mortgage, provides the date from which such computation should be made. *Vawter* v. *Crafts,* 41 Minn. 14, 17 (42 N. W. 483). Should a person purchasing one of these lots immediately after the execution of the mortgage, and paying or offering to pay the amount required for a release from the mortgage, be in the same position, and required to pay the same amount as one attempting to

obtain such a release ten years afterward?   That such
a construction should be given to the mortgage is not
consonant with reason.   In construing the stipulation, all
the contents of the mortgage must be taken into consid-
eration.   If, upon the payment of the principal amount
stipulated, the mortgagee were compelled to release to a
purchaser, then at any time when tendered the amount
she might be compelled to release all of the security given
for the note, without the payment of any interest.   In
the absence from the stipulation of any specification
regarding interest, it would be implied that in each
instance each and every lot should pay accrued interest
on its proportionate share of the debt.   The stipulation
is to be construed in connection with the covenant in the
mortgage as to foreclosure and sale in case of default.
*Vawter* v. *Crafts,* 41 Minn. 14, 17 (42 N. W. 483).   To
require the mortgagee to release the several lots from
her mortgage, and so lose the interest on any one lot,
would be an injustice, and we think it was not the inten-
tion that such should be the case.   If intended that no
interest was to be paid on the amount required for the
release, the stipulation would, in effect, indeed be vicious,
as there would then be no inducement for the purchaser
to make payment and obtain a release until the mortgage
should be foreclosed, and one purchasing subject to the
mortgage in 1892 could allow the matter to remain unpaid
until just before the time of the commencement of this
suit, more than ten years afterward.

The testimony on the part of defendant Raidabaugh
was taken by deposition, which deposition appears to
have been lost since the trial of the cause.   From a
reference to the testimony, found in the transcript, it
seems that Raidabaugh's contract for the purchase of
these lots was attached to his deposition, and we are
informed by counsel that his receipts for payment, and
written evidence of his transactions with the Oregon

Land Company, were lost therewith. The circuit court found in substance that D. M. Smith and subsequent purchasers of the lots in question knew of Raidabaugh's contract, of his equities in the premises, that the allegations of his answer were true, and that they, therefore, were not innocent purchasers.

7. As the evidence concerning Raidabaugh's rights in the premises is not all before us, we are not in a position to review these findings of fact, and they will not be disturbed. *Wyatt* v. *Wyatt,* 31 Or. 531, 535 (48 Pac. 855) ; *Morrison's Estate,* 48 Or. 612, 614 (87 Pac. 1043) ; *Neal* v. *Roach,* 107 Pac. 475.

8. It is claimed in behalf of defendant Raidabaugh that, his receipts and the contract attached to his deposition having been lost or mislaid, to have the cause remanded would work an injustice upon him, while counsel for the other defendants suggests that the cause should be remanded for the purpose of taking the deposition of witnesses in substitution of those lost. It does not appear, however, either from the record or from the briefs or arguments of counsel, that, if such a remand should be made, any different state of facts from those found by the trial court would be disclosed.

Contention is made by counsel for defendant D. M. Smith, and those obtaining title to the lots through him, upon the facts shown by the record and found by the court, that, on account of the failure of defendant Raidabaugh to pay the amount due on his contract, his rights in the premises were forfeited, and that defendant Smith elected to, and did, rescind the contract for the conveyance of the lots and taken possession thereof. None of the defendants claim to have tendered to defendant Raidabaugh a deed of conveyance to the lots in question.

9. Neglect to pay on a stipulated pay day will not of itself produce a forfeiture, if the creditor has not considered time as of the essence of the contract. *Davis* v.

*Wilson,* 55 Or. 403 (106 Pac. 795) ; *Graham* v. *Merchant,*
43 Or. 294, 305 (72 Pac. 1088) ; *Shafer* v. *Niver,* 9 Mich.
253; *Linscott* v. *Buck,* 33 Me. 530; *Clark* v. *Lyons,* 25
Ill. 105. Regarding this point, Mr. Justice BEAN, in *Frink*
v. *Thomas,* 20 Or. 265 (25 Pac. 717: 12 L. R. A. 239),
says: "When the vendor by his contract to convey has
not affirmatively provided that time shall be of the essence
of the contract, a court of equity will ordinarily infer
that interest on the deferred payments would be a
sufficient compensation for the delay. Compensation, and
not forfeiture, is a favorite maxim with a court of equity.
(Citing *Knott* v. *Stephens,* 5 Or. 235; *Brock* v. *Hidy,* 13
Ohio St. 306; *King* v. *Ruckman,* 20 N. J. Eq. 316). * *
Although there is no stipulation in the contract that time
shall be essential, nor anything in the nature or circum-
stances of the agreement to make it so, it could neverthe-
less have been so made by a tender of performance on
the part of the plaintiff and demand of payment. * *
As a general rule, the party who asks for the rescission
of a contract for the sale of real estate must be himself
without fault, and when, as in this case, the payment of
the purchase money and the making or tender of the
deed are to occur simultaneously, they are regarded as
mutual and concurrent acts, which disable either party
from putting an end to the contract without performance
or a valid offer to perform on his part; and, so far as
the question of time is concerned, both parties, after
the day provided for the consummation, may be consid-
ered equally in default, and neither can hold himself
discharged from the obligation of complete performance
until he has tendered performance on his own side and
demanded it on the other."

In so far as shown by the findings of the court and
the record, this language is peculiarly applicable to the
case now under consideration. It was incumbent upon
defendant Smith, when he insisted that Raidabaugh was

in default to such an extent as to entitle him to have the contract rescinded, to allege and prove that he had tendered Raidabaugh a deed of conveyance of the land, according to the terms of the agreement, and demanded performance on the part of the latter. *Frink* v. *Thomas*, 20 Or. 265 (25 Pac. 717: 12 L. R. A. 239). Smith should also have notified Raidabaugh that, unless the money was paid within a reasonable time, the contract would be rescinded, and defendant Raidabaugh was entitled to reasonable time after notice in which to make the required payments. *Graham* v. *Merchant*, 43 Or. 305 (72 Pac. 1088). To describe the matter briefly, the affairs of the Oregon Land Company were in a chaotic state, and the real trouble is that Raidabaugh paid the company too much. It was his right and duty to protect himself by withholding from the contract price a sufficient amount to pay Mrs. Watson for the release of her mortgage upon the lots, according to the terms thereof, and his failure to do this was undoubtedly on account of relying upon the land company to convey title to him, according to its agreement expressed in the contract of sale. Having knowledge of the mortgage, this he did at his peril. *Jackson* v. *Condit*, 57 N. J. Eq. 522 (41 Atl. 374).

The mortgage from defendant D. M. Smith to the Oregon Land Company was given, it is shown, for the purpose of being transferred to Mrs. Watson, and, as the amount thereof is less than that due upon Raidabaugh's contract, it should be canceled. The total amount due upon the land should be applied in payment of defendant Virginia Watson's mortgage.

10. The lots in question should not be burdened with the principal of, or interest on, the mortgage debt apportioned to the other lots. *Mutual Mills Ins. Co.* v. *Gordon*, 121 Ill. 366.

Upon payment to the clerk of $475, together with interest thereon at 8 per cent per annum from the date

to which the interest on Mrs. Watson's mortgage has been paid, which from the note in evidence appears to be about June 20, 1897, and $50 attorney's fees, within 60 days from the date of entry of decree in the lower court, defendant Raidabaugh is entitled to conveyances of title to said lots in fee simple, free from all incumbrance, including Mrs. Watson's mortgage, from plaintiff Charles Scott as assignee, and from defendants holding title thereto through D. M. Smith, namely, to lot 39 from Robert McGilchrist and Belle McGilchrist, and to lot 40 from defendants Albert Smith, J. E. Smith, Cora Smith, Frank E. Smith, and Lois Jory, by Cora Smith, her guardian, substituted for Abe Smith and Martha Smith, deceased. And, in the case of the failure to make either of such conveyances to defendants, the decree shall stand as and for such conveyances, or either of them, and be recorded as such. In the event of Raidabaugh's failure to so make such payments, defendant Virginia Watson's mortgage shall be foreclosed, and the lots sold upon execution in the manner provided by law, and the proceeds thereof applied: (1) To the payment of the costs and expenses of making such sale, and the costs and disbursements of this suit; (2) to the payment of the said sum of $475 and interest and attorney's fees, as above indicated, to defendant Virginia Watson; (3) in case any balance of said proceeds remains after making such payments, that the same be paid to the defendant Raidabaugh.

The decree of the lower court shall be modified as herein indicated, as to interest. Neither party to recover costs upon this appeal.          MODIFIED.