James E. ROEMHILDT,
et al., Respondents,

v.

KRISTALL DEVELOPMENT,
INC., et al., Defendants,

21st Century Bank, Appellant.

No. A10–1846.

Court of Appeals of Minnesota.

May 3, 2011.

John Chuck Peterson, Jorun Groe Meierding, Maschka, Riedy & Ries, Mankato, MN; and David R. Cummiskey, Cummiskey Law Office, Waterville, MN, for respondents.

Brian M. Sund, Eric G. Nasstrom, Kathleen M. Ghreichi, Morrison, Fenske &

Sund, P.A., Minnetonka, MN, for appellant.

Considered and decided by BJORKMAN, Presiding Judge; STONEBURNER, Judge; and CRIPPEN, Judge.[*]

## OPINION

STONEBURNER, Judge.

Appellant bank, owner of real estate subject to a mortgage, challenges the district court's ruling that the bank cannot enforce a partial-release provision contained in the note secured by the mortgage.

## FACTS

In 2004, respondents James and Barbara Roemhildt (Roemhildts) sold a large parcel of land to defendant Kristall Development, Inc. (KDI), which platted the parcel into approximately 40 lots. Roemhildts financed a portion of the purchase price, accepting at closing KDI's note for $360,000, due on May 12, 2006, and secured with a contemporaneously executed mortgage. The note, which was not signed by Roemhildts, contains a provision stating that "$10,000 is due upon the sale of each lot at the time of closing. Roemhildt will provide a partial release for the lot being sold."[1] This partial-release provision is not included in the mortgage. The mortgage was recorded in May 2004 and was subordinate to two mortgages previously recorded by KDI's primary lender, Lakeland Construction Finance, LLC (Lakeland).

In May 2005, KDI sold Lot 2 to Kristall Homes, Inc. (KHI), and Lakeland released its two mortgages on Lot 2. But Roemhildts were not aware of the sale, were not paid the $10,000 due under the note, and did not provide a partial release of their mortgage interest in Lot 2. Lakeland also released Lot 1 from its mortgages and subsequently foreclosed one of its mortgages against all of the remaining property that was covered by the Roemhildts' mortgage. Lot 1 was not released from the Roemhildts' mortgage.

KHI obtained a loan from FCC Acquisition Corp. (FCC) secured by a mortgage on property that included Lot 2 and constructed a home on Lot 2. FCC subsequently assigned its mortgage on Lot 2 to appellant, 21st Century Bank (the bank), which obtained and recorded a voluntary-foreclosure agreement from KHI and individual guarantors, making the bank the current owner of Lot 2.

Because KDI defaulted on the note, Roemhildts brought a foreclosure action against KDI and the bank to foreclose their mortgage on Lots 1 and 2. Because the bank disputed that Roemhildts' mortgage had priority over its mortgage with regard to Lot 2, the foreclosure proceeding initially involved only Lot 1. The district court ordered judgment against KDI in favor of Roemhildts in the amount of $351,768.90 and ordered the sale of Lot 1. Roemhildts bought Lot 1 at the sheriff's sale for $154,409.80; Lot 1 was later redeemed for $158,544.61.

After a bench trial on the claims involving Lot 2, the district court held, in relevant part, that the bank is not entitled to enforce the partial-release provision contained in the note from KDI to Roemhildts

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

[1]. Roemhildts mention on appeal that they did not sign the note but they did not argue to the district court or on appeal that they were not bound by the note to provide a partial release for any lot sold on payment of $10,000 at the time of sale.

and that Roemhildts are entitled to foreclose their mortgage on Lot 2. This appeal followed.

## ISSUE

Did the district court err by holding that the bank cannot enforce the partial-release provision because it is contained only in the note and not in the mortgage?

## ANALYSIS

■ In *Vawter v. Crafts*, 41 Minn. 14, 17–18, 42 N.W. 483, 485 (1889), the Minnesota Supreme Court concluded that a partial-release clause contained in a mortgage benefits the land and the grantee of the mortgagor can compel the mortgagee to execute a release of the mortgage on payment of the required sum and all accrued interest. The issue in this case is whether a partial-release provision contained in the note that is referenced in the mortgage incorporates the partial-release provision into the mortgage such that it inures to the benefit of the land and can be enforced by a subsequent purchaser of the land. The district court concluded that *Vawter* does not apply

> when the partial[-]release clause is contained in a promissory note that [the bank] was not a party to and that [the bank] has no interest in. Because [the bank] is not in privity with any of the parties to the promissory note, [the bank] cannot force [Roemhildts] to comply with any of its obligations.

On appeal, Roemhildts assert that the district court correctly concluded that the note is a private contract between them and KDI in which the bank has no interest and cannot enforce. The bank does not dispute that it lacks privity with any party to the promissory note, but argues that the district court erred by failing to hold that the partial-release provision of the note is incorporated into the mortgage, inures to

the benefit of the land, and, under *Vawter*, is enforceable by the bank. We agree.

■ The parties do not dispute that both the note and the mortgage are contracts, executed simultaneously at the Roemhildt–KDI closing. Absent ambiguity, the interpretation of a contract is a question of law. *Bus. Bank v. Hanson*, 769 N.W.2d 285, 288 (Minn.2009). Questions of law are reviewed de novo. *Fin Ag, Inc. v. Hufnagle, Inc.*, 720 N.W.2d 579, 584 (Minn.2006). "Generally, instruments executed at the same time, by the same parties, relating to the same transaction will be considered and construed together, since they are, in the eyes of the law, one contract or instrument." *Farrell v. Johnson*, 442 N.W.2d 805, 806 (Minn.App.1989) (holding that unambiguous agreements executed at the same closing of a sale of real property related to the same transaction and should be construed together). This is true even when the documents make no reference to one another. *Marso v. Mankato Clinic, Ltd.*, 278 Minn. 104, 114, 153 N.W.2d 281, 289 (1967) (stating that "[w]here several instruments are made part of one transaction, they will be read together and each will be construed with reference to the others, although the instruments do not reference each other").

■ "Whether separate documents executed simultaneously should be treated as a single contract is governed by the intent of the parties manifested at the time of contracting and viewed in light of the surrounding circumstances" and is not contingent on a finding of ambiguity. *Farrell*, 442 N.W.2d at 807 (stating that "[a]mbiguity is simply one circumstance of many under which the [district] court will be allowed to look outside the contract to ascertain the parties' intent").

Roemhildts argue that they cannot be found to have intended the partial-release

provision in the note to be for the benefit of the land, stating that "just because [Roemhildts] may have bargained *with KDI* for $10,000 per partial release does not mean [Roemhildts] intended to provide a release to another party when KDI neither requested nor paid for a release." But intent is viewed in light of the circumstances surrounding Roemhildts' sale of property to KDI. *Id.* The sale was part of a real-estate-development project that was contemplated that individual lots in the development would be sold at different times. In these situations, the use of partial-release agreements is common. *See, e.g., First Minn. Bank v. Overby Dev., Inc.,* 783 N.W.2d 405, 407 n. 2 (Minn.App. 2010) (noting that a mortgage agreement for a development contained a partial-release clause because the parties contemplated the sale of lots individually). And *Vawter* rejected a similar contention that a provision in a mortgage for partial-release of platted lots was "a purely personal" covenant between the mortgagee and mortgagors that did not pass with the land. 41 Minn. at 15, 42 N.W. at 484.

Much abstruse and technical learning has been wasted in discussing the question what are and what are not covenants running with the land. But we think it will be found, by considering the principle underlying the subject, that, according to the best-considered modern authorities, the law corresponds with common sense, and annexes a covenant to the land when the subject of it is something to be done or refrained from, about or touching, concerning or affecting, the covenantee's land ... which would benefit the same, or increase its value in the hands of the holder.... The rule, we think, is universal that the benefit passes with the land to which it is incident. In the case at bar the agreement or covenant is one relating to the rights of the parties in the land. It

affects the title, and hence affects the value of the estate of the holder. The release is for the benefit of the owner; in fact, no one but the owner could be benefited by it. It would be against reason if it did not inure to the grantee of the covenantee.

*Id.* at 16, 42 N.W. at 484. We conclude that, as a matter of law, the partial-release provision contained in the note was intended to benefit the owner of the lots sold and, therefore, the note and mortgage must be read together as a single instrument, making the partial-release provision in the note enforceable by the bank.

The district court supports its ruling with a line of cases treating promissory notes and mortgages as two distinct documents. *See, e.g., Winne v. Lahart,* 155 Minn. 307, 309, 193 N.W. 587, 588 (1923) (stating that the doctrine of construing instruments executed at the same time and for one purpose as one instrument does not mean that where a note and mortgage are executed contemporaneously, a provision in the mortgage is thereby incorporated into and becomes part of the note). In *Winne,* the supreme court held that the due date of a note cannot be accelerated to allow a mortgagee to obtain a personal-deficiency judgment against the maker of a note solely because of a provision in the mortgage securing the note providing that the mortgagee may declare the entire mortgage debt due if the mortgagor is delinquent in interest or tax payments. *Id.* at 310, 193 N.W. at 589. The supreme court explained that a mortgagee "has two distinct remedies.... He may sue on the note and recover an ordinary personal judgment, or he may [foreclose on the property] and apply the proceeds to the payment of the debt." *Id.* at 309–10, 193 N.W. at 588–89. To the extent that *Winne* is asserted to be inconsistent with the conclusion we reach in this case, that asserted

inconsistency results from the fact that whether separate documents executed simultaneously should be treated as a single contract is determined on the facts of the particular case. In this case, we conclude that the doctrine applies and that application of the doctrine does not result in a windfall to or hardship for either party. Roemhildts will get the payment with interest on the sale of Lot 2 that was contemplated at the time the documents were created.

We decline to address additional arguments raised by the bank.

## DECISION

Because the promissory note containing a partial-release provision was executed simultaneously with the mortgage securing the note and both documents were part of a development plan that contemplated the separate sale of individual lots, we conclude that, in this case, the mortgage and note must be read and construed together as one instrument incorporating the partial-release provision into the mortgage. Under *Vawter*, 41 Minn. at 17–18, 42 N.W. at 485, a partial-release provision in a mortgage inures to the benefit of the land to be released and is enforceable by the owner of the land on payment of the required amount, plus accrued interests and applicable costs. The district court erred by holding that the bank cannot, by tendering such payment, force Roemhildts to release their mortgage on Lot 2.

**Reversed and remanded.**