*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0484**

Storms, Inc.,
Appellant,

vs.

Mathy Construction Company,
Respondent.

**Filed November 30, 2015
Affirmed in part, reversed in part, and remanded
Worke, Judge**

Houston County District Court
File No. 28CV13235

Scott M. Flaherty, Daniel N. Moak, Cyrus C. Malek, Jordan L. Weber, Briggs and
Morgan, P.A., Minneapolis, Minnesota; and

Michael A. Murphy, Hammel & Murphy, P.L.L.P., Caledonia, Minnesota (for appellant)

Justin W. Peterson, James Naugler (pro hac vice), Moen Sheehan Meyer, Ltd., LaCrosse,
Wisconsin (for respondent)

Considered and decided by Kirk, Presiding Judge; Worke, Judge; and Smith,
Judge.

**U N P U B L I S H E D   O P I N I O N**

**WORKE**, Judge

This is an appeal from a judgment following a court trial limited to a
determination of damages arising out of a highway construction project in which the

district court found that respondent-general-contractor breached its subcontract agreement with appellant-subcontractor. Appellant argues that the district court erred by applying an equitable analysis to determine that appellant was entitled to no damages, rather than awarding damages under the contract. Respondent filed a notice of related appeal arguing that the district court erred by finding that it breached the subcontract agreement. We affirm the district court's finding that respondent breached the subcontract agreement, but we reverse the district court's order for no damages based on equity, and remand for a determination of damages under the contract.

**FACTS**

In January 2011, the Minnesota Department of Transportation (MNDOT) solicited bids for a project to repair portions of Highways 44 and 76 in Houston County. In an effort to secure the contract, respondent Mathy Construction Company solicited bids from subcontractors. In doing so, respondent supplied the prospective subcontractors with a copy of MNDOT's statement of estimated quantities, which identified the amounts of materials that would be required to perform certain aspects of the project.

Appellant Storms, Inc. submitted a bid to respondent that was calculated based upon the amounts of materials identified in the statement of estimated quantities, and appellant's bid was successful. Respondent, in turn, secured the general contract with MNDOT. Appellant and respondent subsequently entered into a subcontract agreement on March 22, 2011.

The Highway 44 portion of the project was completed in May 2011, and the Highway 76 portion of the project was completed in August 2011. In January 2012,

respondent sent two requests to MNDOT seeking payment for the work provided based on plan dimension amounts. But because MNDOT miscalculated the amount of materials needed for the subcontract, the planned quantity amounts for these projects exceeded the actual amounts necessary to complete the projects. Consequently, MNDOT issued a change order on May 11, 2012, reducing the amount owed by MNDOT to appellant by $327,064.42.

In March 2013, appellant filed suit against respondent for breach of the parties' subcontract agreement. In addition to its costs and attorney fees, appellant sought damages in the amount of $327,064.42, which was the difference between the planned quantity amounts set forth in the subcontract agreement and the amount appellant was actually paid. Respondent denied the allegations, but admitted that appellant was not paid for the planned quantity amounts because MNDOT "issued a change order changing the planned amounts," which reduced "the contract amount by $327.064.42." Respondent also declined to implead MNDOT.

Respondent moved for summary judgment arguing that under MNDOT specification 1901, MNDOT had the right, at any time, to make changes to the planned quantities that were incorrectly calculated. Respondent argued that appellant is bound by MNDOT's changes, therefore there was no breach of the subcontract. Appellant filed a cross motion for summary judgment arguing that MNDOT specification 1402[1] was

---

[1] Specification 1402.1 provides in relevant part:
> [MNDOT] may alter the details of construction as necessary for proper completion of the Project and as desired for reasons of public interest. Alterations may be made at any

3

applicable. Appellant claimed that respondent breached the subcontract agreement because respondent failed to pay based on the original planned quantities, and failed to follow specification 1402, which requires changes in quantities to be made during the progress of the work. Thus, appellant argued that it was entitled to payment for the plan dimensions as set forth in the original subcontract agreement.

Following a summary-judgment hearing, the district court determined that, under the terms of the subcontract agreement, "any modifications [to the agreement] must be made during the progress of the work." The district court also determined that MNDOT's change order occurred nine months after completion of the project, rather than during the progress of work, after respondent had submitted a written demand for payment. Therefore, the district court concluded that respondent breached the subcontract agreement and allowed appellant the "right to seek payment from [respondent] for any amounts that MNDOT has failed to pay." But the district court concluded that "[a] fact question remains as to the amount of [appellant's] damages," and stated that a hearing would be scheduled to determine damages "based on what is just and equitable."

Appellant moved for amended findings, arguing that, because there was no dispute as to the plan dimensions, it was entitled to judgment in the amount of $327,064.42, the amount unpaid under the original subcontract agreement. Respondent replied with a

> time *during the progress of the work*, but will not involve added work beyond the limitations imposed by law, nor beyond termini of the proposed construction except as may be necessary to satisfactorily complete the Project.

(Emphasis added.)

4

request to reconsider, supported by the affidavit of MNDOT Project Engineer Mark Anderson. Anderson testified that MNDOT miscalculated the planned quantities and that under specification 1901 he had the authority to summarily change the miscalculated quantities, which he did in the May 2012 change order. Anderson also testified that such changes are not subject to specification 1402, which "applies to situations wherein there are unforeseen changes or abnormalities in the physical conditions at the job site that require the contractor or its subcontractors to perform more or less work or to provide more or less materials than originally called for." Anderson further testified that, under specification 1903, appellant is entitled to request its fixed costs resulting from the miscalculation, but not its lost profits. The district court denied both parties' motions.

At the damages hearing, Anderson testified consistent with his affidavit submitted in support of respondent's request to reconsider. The district court then found that the "parties are bound by the MNDOT specifications." But the district court found that its "knowledge about the applicability of specification 1402.2 is limited to the testimony of . . . Anderson," who testified that specification 1402 "only applies to situations of unforeseen or significant changes," which did not occur in this case. Thus, the district court found that "based on the evidence presented, specification 1402 does not apply."

The district court also found that, based upon Anderson's testimony, appellant is "only entitled to its fixed costs" under specification 1903. But the district court concluded that appellant "failed to present evidence to support its claim for damages and has failed to meet its burden." Consequently, although the district court's order recognizes that appellant "prevail[ed] on the merits," the district court dismissed

5

appellant's claim for damages. Appellant then moved for amended findings or a new trial, which was denied. Appellant subsequently filed this appeal, and respondent filed a notice of related appeal.

## DECISION

A district court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. On appeal from summary judgment, we review de novo "whether there are any genuine issues of material fact and whether the district court erred in its application of the law." *STAR Centers, Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76 (Minn. 2002). "We view the evidence in the light most favorable to the party against whom summary judgment was granted." *Id.* at 76-77.

Appellant challenges the district court's decision to grant equitable relief rather than damages under the contract. Respondent argues that the district court misapplied the relevant MNDOT specifications. Thus, respondent argues that the district court erred by concluding that respondent breached the subcontract agreement. Because a reversal on the district court's grant of summary judgment would obviate the need for an analysis of damages, we address respondent's argument first.

*Breach of the subcontract agreement*

A contract's language is unambiguous if it has only one reasonable interpretation. *Halla Nursery, Inc. v. City of Chanhassen*, 781 N.W.2d 880, 884 (Minn. 2010). "Where

6

contractual language is unambiguous on its face, no extrinsic evidence is required to interpret a contract's terms. *Finke v. State*, 521 N.W.2d 371, 372 (Minn. App. 1994), *review denied* (Minn. Oct. 27, 1994). "Absent ambiguity, the interpretation of a contract is a question of law" subject to de novo review. *Roemhildt v. Kristall Dev., Inc.*, 798 N.W.2d 371, 373 (Minn. App. 2011), *review denied* (Minn. July 19, 2011).

The parties agree that the MNDOT specifications are standardized contract terms that must be included in all contracts with the state, and that they were incorporated in the general contract between respondent and MNDOT. Section 2 of the subcontract agreement incorporates the general contract into the subcontract agreement. But Section 12 of the subcontract agreement provides that "[w]here a provision of the general contract is inconsistent with the provision of this Subcontract, this Subcontract shall govern." Finally, Section 10.A. of the subcontract agreement provides:

> [MNDOT] may make changes in the Work by issuing modifications to the General Contract. [Respondent] shall notify [appellant] upon receipt of any modification affecting [appellant's] Work. Unless otherwise directed by [respondent], [appellant] shall not thereafter order materials or perform work which will be inconsistent with the modifications to the General Contract.

The district court reasoned that, although "MNDOT is not bound by the terms of the parties' subcontract agreement," the subcontract is "meant to be read in accord" with MNDOT's construction specifications, which are binding on MNDOT. The district court then referenced specification 1402.2(C), which states:

> The Engineer reserves the right to make, in writing, at any time during the progress of the work, such changes in quantities and such alterations in the work as are necessary to

7

> satisfactorily complete the Project. Such changes in quantities and alterations shall not invalidate the Contract nor release the Surety, and the Contractor agrees to perform the work as altered.

The district court found that, when specification 1402 and the subcontract agreement are "read as a whole, it is apparent that any modifications made pursuant to [the subcontract] must be made during the progress of work." The district court then found that, because the change order "was not made at any time during the progress of work," appellant was entitled to be paid pursuant to the plan dimensions. The district court concluded that respondent breached the subcontract agreement by refusing to compensate appellant according to the plan dimensions, and that under the subcontract agreement, appellant has the right to seek compensation against respondent for MNDOT's breach.

Respondent argues that the applicable MNDOT specification is 1901, not 1402, as found by the district court. Respondent contends that, under specification 1901, MNDOT's engineer could unilaterally change the planned quantities if he determined that they were miscalculated. Thus, respondent argues that the district court erred by concluding that respondent breached the subcontract agreement.

In support of its claim, respondent references the district court's order on damages. In that order, the district court found that "Specification 1402 does not apply to the case at hand" and that specification 1901.1 allowed MNDOT "to modify the planned quantities after it was determined that the planned quantity was less than anticipated." The district court then concluded that appellant is only "entitled to its fixed costs" under specification 1903.

8

We acknowledge that the district court's order on damages appears to contradict the order for summary judgment holding that respondent breached the subcontract agreement. But the district court never specifically revised its previous summary-judgment order under rule 54.02. *See* Minn. R. Civ. P. 54.02 (stating that if the district court rules on fewer than all claims without stating the ruling is final, the order "is subject to revision at any time" before resolution of "all" claims). Instead, the district court found that respondent breached the subcontract agreement and that appellant "prevail[ed] on the merits." Moreover, even if the district court concluded in its order for damages that there was no breach of the subcontract agreement, our review of that decision is de novo because the subcontract agreement is unambiguous. *See Roemhildt*, 798 N.W.2d 373 (stating that the interpretation of an unambiguous contract is subject to de novo review).

As noted above, Section 10.A of the subcontract agreement states that MNDOT "may make changes in the Work by issuing modifications to the General Contract." But Section 10.A does not state *when* the changes must be made. Nonetheless, the next sentence of Section 10.A provides that "[respondent] shall notify [appellant] upon receipt of any modification affecting [appellant's] Work." Section 10.A goes on to provide that "[u]nless otherwise directed by [respondent], [appellant] shall not thereafter order materials or perform work which will be inconsistent with the modifications to the General Contract." These sentences indicate that any changes made to the project must be made during the progress of work because the language indicates that when the change is made, there is still work left to be completed. And, as the district court found, "the

9

remaining sentences of the section would not have been necessary" unless it was mandatory that the changes were made during the progress of work.

Respondent claims that MNDOT specification 1901 is applicable and that, under specification 1901, changes could be made after the work was completed. We disagree. Specification 1901 conflicts with the plain language of the subcontract mandating that changes to the work be made during the "progress of work." Under the subcontract agreement, "[w]here a provision of the General Contract is inconsistent with the provision of this Subcontract, this Subcontract shall govern." Thus, specification 1901 is not applicable. And because the plain language of the subcontract agreement required changes to be made during the "progress of work" rather than after the work was completed, MNDOT's change order issued nine months after the project was completed was not valid under the subcontract agreement. Therefore, respondent breached the subcontract agreement by failing to pay appellant under the terms of the agreement.

*Damages*

Minnesota law provides that "[a] party may not have equitable relief where there is an adequate remedy at law available." *ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 305 (Minn. 1996). This court reviews de novo whether a party has an adequate remedy at law. *Id.*

Appellant argues that, because the parties' rights are governed by a valid contract, equitable relief is precluded and appellant is entitled to damages under the contract. We agree. The Minnesota Supreme Court has stated that "equitable relief cannot be granted where the rights of the parties are governed by a valid contract." *U.S. Fire Ins. v. Minn.*

*Zoological Bd.*, 307 N.W.2d 490, 497 (Minn. 1981). Rather, the measure of damages for breach of contract is generally the amount of money necessary to put the plaintiff in the position in which he would have been if the defendant had complied with the contract. *See Paine v. Sherwood*, 21 Minn. 225, 232 (1875); *Kellogg v. Woods*, 720 N.W.2d 845, 853 (Minn. App. 2006); *Peters v. Mut. Benefit Life Ins. Co.*, 420 N.W.2d 908, 915 (Minn. App. 1988).

Here, appellant sought damages in the amount of $327.064.42, which was the amount unpaid by respondent under the subcontract agreement. Because respondent breached the subcontract agreement, appellant is entitled to contract damages. But as appellant pointed out at oral argument, the exact amount due under the subcontract agreement is unclear because appellant may have already received some of the amount outstanding under the subcontract agreement. Accordingly, we reverse the district court's conclusion on damages and remand for proceedings consistent with this opinion.

**Affirmed in part, reversed in part, and remanded.**

11