## EASTERN OREGON LAND CO. v. MOODY. †

### (Circuit Court of Appeals, Ninth Circuit. July 15, 1912.)

### No. 1,956.

1. SPECIFIC PERFORMANCE (§ 97\*)—CONDITIONS—PAYMENT OF PRICE.

Where a contract for the sale of real property required payment of the amount due thereon as a condition precedent to defendant's covenant to convey, payment of the amount due was a prerequisite to the vesting of any right in complainant to compel specific performance, as no estate vested in nor right to a conveyance accrued to complainant as long as the condition remained unperformed.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 286–298; Dec. Dig. § 97.\*]

2. SPECIFIC PERFORMANCE (§ 97\*)—CONDITIONS—TENDER OF PRICE—EFFECT.

Where complainant was only entitled to a deed to certain land after having paid all sums due under the contract and interest, a tender of

payment conditionally on the delivery of a deed was not equivalent to payment so as to entitle complainant to enforce specific performance.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 286–298; Dec. Dig. § 97.*

Necessity of tender of performance by plaintiff in order to enforce specific performance, see note to Hosmer v. Wyoming Ry. & Iron Co., 65 C. C. A. 91.]

**3.** TENDER (§ 13*)—REQUISITES—PRESENT ABILITY.

Where, at the time complainant made a conditional tender of the amount due under a contract for the sale of land, the total amount was $7,076.21, and it appeared that at that time complainant's bank account was overdrawn, and that not until some months thereafter he obtained a loan of $7,000, but it did not appear that he was able to produce the balance, it was not shown that he had present ability to make the tender good so as to render his offer to pay equivalent to an actual production and tender of the money.

[Ed. Note.—For other cases, see Tender, Cent. Dig. §§ 29–32; Dec. Dig. § 13.*]

**4.** VENDOR AND PURCHASER (§ 170*)—TENDER—PARTICULAR SUM.

Complainant's offer to pay defendant "the balance due on the contract" with defendant for the sale of certain land was not a tender of a specific sum sufficient to cover all liability on the contract, and was therefore not equivalent to an actual production and tender of the money so as to entitle complainant to specific performance.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 344–348; Dec. Dig. § 170.*]

**5.** VENDOR AND PURCHASER (§ 187*) — INSTALLMENT CONTRACT — DEFAULT — WAIVER.

A vendor's receipt of interest due on a contract for the sale of land while it was in arrears was not a waiver of the vendee's subsequent default in meeting the terms of the vendor's notice of termination of the contract, unless payments in arrears were made within a specified time.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 121, 374, 375; Dec. Dig. § 187.*]

Gilbert, C. J., dissenting.

Appeal from the Circuit Court of the United States for the District of Oregon.

Suit in equity by Z. F. Moody against the Eastern Oregon Land Company to compel specific performance of a contract for the sale of land, in which defendant filed a cross-bill for cancellation of the contract. Decree by Circuit Court (180 Fed. 532) for complainant, and defendant appeals. Reversed, with instructions.

Huntington & Wilson, of Portland, Or., and Garret W. McEnerney and W. S. Goodfellow, both of San Francisco, Cal., for appellant.

Martin L. Pipes, of Portland, Or., and W. H. Wilson, of Portland, Or., for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge. The plaintiff, Z. F. Moody, during the time mentioned in this action resided and had an office at The Dalles, in Oregon, where his son, M. A. Moody, was his agent. The defendant has its office in San Francisco, Cal., but was represented by an

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

agent, George T. Parr, residing at Moro, in Oregon, and by attorneys Huntington & Wilson, residing at The Dalles, Or.

The contract in question bears date January 2, 1902. By its terms the plaintiff, as party of the first part, agreed to pay for certain lands in Wasco and Sherman counties, Or., $8,457.75, as follows:

| | |
|---|---:|
| Upon the execution of the contract | $1,457 75 |
| On or before January 1, 1903 | 1,750 00 |
| On or before January 1, 1904 | 1,750 00 |
| On or before January 1, 1905 | 1,750 00 |
| On or before January 1, 1906 | 1,750 00 |

It was agreed by the plaintiff that interest should be paid at the rate of 8 per cent. per annum from the date of the contract payable semiannually on each of said sums, until the same should be fully paid. It was further agreed that the plaintiff should pay all taxes which might come due and payable on the described premises until the conveyance should be executed as provided in the agreement. The defendant agreed, as the party of the second part, that upon the payment of said sums and interest it would convey to the plaintiff the described premises. It was further agreed that in case the plaintiff should make default in the payment of any one or more of the sums of money agreed to be paid for a period of six months the plaintiff would surrender the possession of the premises to the defendant, and the defendant was empowered to take possession of the premises and terminate the contract. The payment of the sums and interest and the strict performance by the plaintiff of all the covenants and agreements contained in the contract, to be by the plaintiff kept and performed, were made conditions precedent to the said conveyance, and time was declared to be the essence of the contract. Payments were made on this contract by the plaintiff as follows:

| | |
|---|---:|
| February 13, 1902: Payment on the first installment of the principal, due January 2, 1902 | $1,457 75 |
| January 24, 1903: First payment of interest due July 2, 1902, $280; and interest due January 2, 1903, $280; and interest on overdue interest, $14.20 | 574 20 |
| June 2, 1903: Second payment of interest due July 2, 1903 | 280 00 |
| December 31, 1903: Third payment of interest, due January 2, 1904 | 280 00 |
| December 29, 1905: Fourth payment on interest due July 2, 1904, $280; due January 2, 1905, $280; due July 2, 1905, $280; and due January 2, 1906, $280, total $1,120; and interest on overdue interest, $67 | 1,187 00 |
| August 13, 1906: Fifth payment of interest due July 2, 1906 | 280 00 |

The only payment made on account of the principal was made on February 13, 1902, which, by the terms of the agreement, should have been paid on January 2, 1902. The plaintiff defaulted in this payment 1 month and 12 days, and defaulted on all four of the other payments on account of the principal. On August 11, 1906, the defendant notified the plaintiff that the defendant terminated the contract of January 2, 1902, for the sale of land therein described by reason of the plaintiff's failure to make the payments which by said contract plaintiff had agreed to make.

The plaintiff was then in default with respect to all the installments

on account of the principal except the first. He was in default 3 years, 7 months, and 12 days with respect to the second installment; 2 years, 7 months, and 12 days with respect to the third; 1 year, 7 months, and 12 days with respect to the fourth; and 7 months and 12 days with respect to the fifth and last installment. He defaulted in the payment of the first installment of semiannual interest, due July 2, 1902, 6 months and 22 days; and on the second installment, due January 2, 1903, 22 days. He paid the third installment 1 month before it was due, and the fourth installment 2 days before it became due. He defaulted in the payment of the fifth installment, due July 2, 1904, 1 year, 5 months, and 27 days. On the sixth installment, due January 2, 1905, he was in default 1 year lacking 4 days; and on the seventh installment, due July 2, 1905, he was in default 6 months, lacking 4 days. The eighth installment, due January 2, 1906, he paid December 29, 1905, or 4 days before it came due. The ninth installment, due July 2, 1906, he did not pay until August 13, 1906, or after he had been in default 1 month and 11 days; and he did not then pay, or offer to pay, the interest on the principal from July 2, 1906, to August 13, 1906, amounting to $63.77.

During a period of 4½ years in which nine semiannual payments of interest became due, he failed to make six payments, including the last due July 2, 1906, at the time agreed upon, and only made three payments on or before the time when they became due. For none of these defaults was there a waiver on the part of the defendant of any of the terms of the contract.

How did the defendant treat these defaults?

On December 14, 1903, defendant's agent notified the plaintiff by letter that on January 2, 1904, the second and third payments on his contract would fall due, as follows:

Second payment............................................. $1,750
Third payment................................................. 1,750
And interest to January 2, 1904................................. 280

The agent of the defendant stated that the defendant had requested him to collect all amounts maturing so that he could have his books in shape for the directors' meeting of the company on January 12, 1904. The agent stated further that he took occasion to notify the plaintiff before hand so that he could make arrangements to meet the indebtedness promptly when due. To this letter, M. A. Moody, the son and agent of the plaintiff, Z. F. Moody, replied by letter, under date of December 18, 1903, stating that his father was then in California; expected him home about the first of the year. The son wrote further that he understood from his father that his arrangements with the company anticipated that the company would carry along the principal until he could conveniently retire it, if the interest was kept paid promptly on its due day. To this letter the defendant, by its agent, Parr, replied under date of December 21, 1903, that there was no definite promise given by the plaintiff regarding the payments. The agent stated that he would endeavor to carry the account without payments as long as possible; but, the company having called upon him for payment, he had no alternative in the premises. If,

however, the plaintiff would send half of the amount due and interest, he would see that it was satisfactory with the company to allow the other payments to continue one year. This demand was not complied with, and the deferred payment was defaulted; but on December 31, the semiannual interest of $280 was paid with the promise that after the New Year the principal payments would be adjusted with the defendant. On January 1, 1904, defendant's agent acknowledged receipt of the check for $280, being interest due January 2, 1904, and noticed the promise of the plaintiff that the principal payments would be adjusted in a short time. This promise was not kept, and the promised payment was defaulted.

. On January 28, 1904, defendant's agent telephoned to plaintiff demanding payment. Plaintiff's agent replied by letter that it was not entirely convenient to make the payment then, but he thought he could arrange it soon. He stated that he would bear in mind the fact that defendant was anxious to reduce the amount at an early date, and he promised to favor the defendant as quick as he could. This promise was not kept and the promised payment was defaulted. On June 17, 1904, defendant's agent demanded of plaintiff by letter payment of the interest of June 2, 1904. On June 27th, defendant's agent corrected the error in the demand as to the date when interest was due, and stated it as being July 2, 1904. No notice was taken of this corrected demand, and payment was defaulted. On August 25, 1904, defendant's agent notified the plaintiff that the defendant company was requesting information regarding arrangements made with the plaintiff for an extension of time on payments due on the contract. The agent stated that in replying to his letter the defendant company had sanctioned his actions in the matter, and stated that they preferred to have the interest paid semiannually, as provided for in the agreement. The agent thereupon requested the plaintiff to comply with this part of the contract, and he would carry the payments along until such time as the defendant should demand that collections be made. No notice was taken of this letter by the plaintiff, and no payment of the interest then due was made; plaintiff defaulted.

On December 6, 1904, defendant's agent notified the plaintiff by letter that on January 2, 1905, there would be due on the contract, $5,250, and accrued interest, $571.20, making the total amount due, $5,821.20. The agent stated further in this letter that of this amount he expected a payment of $1,750, and accrued interest, $571.20, making a total of $2,321.20. Plaintiff was requested to give careful attention to this demand, as he must have this amount indicated by the 2d proximo. No attention was paid to this demand by the plaintiff and payment was defaulted. On July 12, 1905, defendant's agent notified the plaintiff by letter that on July 2d there would be due on account of interest on his contract the sum of $873.60, and demand of payment was made. No attention was paid to this demand by the plaintiff and payment was defaulted. On December 15, 1905, the defendant's agent having received a letter from the president of the defendant

company, the agent went to The Dalles and submitted this letter to M. A. Moody, plaintiff's agent at that place. The letter is as follows:

"Eastern Oregon Land Co., Columbian Bldg.,
"San Francisco, Cal., December 14, 1905.

"Mr. George T. Parr, Moro, Or.—Dear Sir: In relation to the contract of Z. T. Moody I herewith inclose you a statement of the account as it appears on our books. From this account you will note that Governor Moody is far in arrears with interest and principal. The company has heretofore instructed you to proceed with the collection of this account and to bring the necessary proceedings, if it is necessary, to recover possession of the land and damages on account of the loss sustained by it through the possession which Mr. Moody has had of the land. I want the matter immediately taken up by you and a prompt answer as to what Mr. Moody intends to do. If he refuses to pay in full all that is now due, I wish you to refer the matter to Messrs. Huntington & Wilson and instruct them to begin the necessary proceeding to collect the amount.

"Very truly yours, Walter S. Martin, President."

The paper attached to the letter is as follows:

Due on Moody Contract.

| | Interest. | |
|---|---|---|
| Principal, | | $7,500.00 |
| To July 1, '04, | $280. | |
| " Jan. 1, '05, | 280. | |
| " July 1, '05, | 280. | |
| " Jan. 1, '09, | 280. | 1,120.00 |
| | $8,620 | |
| Also inst. on deferred interest, | | 67.20 |
| | | $8,687.20 |

After a conversation with plaintiff's agent concerning the matter referred to in this letter, defendant's agent agreed to accept the interest in full to January 2, 1906; the plaintiff stating that he was tired of paying 8 per cent. interest. He requested defendant's agent to write to the defendant company that he would look for the money outside, or borrow it for a less rate of interest, if he could not raise it from his own resources. He said he would pay it within a few months. The defendant's agent thereupon wrote to the defendant company as follows:

"Moro, Oregon, Jan. 1, 1905.

"Mr. E. A. Wasserman, Asst. Secretary, San Francisco, Cal.—Dear Sir: Last Friday we called upon Hon. M. A. Moody of The Dalles with reference to the account of his father, Z. F. Moody. Received from him a check for $1,187.00 which is the full amount of interest on the account to January 2, 1906. Mr. Moody stated that he was very anxious to pay off the indebtedness as he objected to paying eight per cent. and he was endeavoring to make a loan on the outside, and if he could not he would meet the obligation in a few months from his own resources. We promised him to present the matter and if satisfactory to the company would allow the account to continue until he could make some arrangement. Kindly advise us if this is satisfactory, and oblige. Yours very truly, Eastern Oregon Land Co.,

"By Geo. T. Parr, Agt."

In reply to this letter defendant's agent received from the defendant company the following letter:

"Eastern Oregon Land Co., San Francisco, January 9, 1906.

"Mr. George T. Parr, Moro, Oregon—Dear Sir: We are in receipt of the draft covering the amount of interest due on Gov. Moody's contract. As I stated to you before we are anxious to arrive at some conclusion with him about the principal as well as the interest. All of which is now overdue. I must ask you to immediately take this matter up and get a settlement from Gov. Moody of the principal. We do not wish to have contracts so long in arrears. We recognize that it is necessary to give a leave way in deserving cases but Gov. Moody has imposed on our forbearance more than the conditions warrant and we must therefore require a satisfactory settlement at the present time. * * *

"Very truly yours,                    Walter S. Martin, President."

This letter defendant's agent submitted to the plaintiff's agent, with this statement: That if the plaintiff could pay $1,000 on the principal, it was possible to get the defendant company to accept that and continue the other payments for a longer period. He promised defendant's agent that he would send a check for that amount in a short time. Plaintiff failed to keep this promise, and did not send the check, and payment as promised was defaulted.

Parr afterwards received a letter from the defendant dated March 22, 1906, containing the following paragraph:

"Referring to our letter under date of January 9th we stated at that time, that we were anxious to arrive at some conclusion on the contract of Gov. Moody. As before stated, we do not think the conditions warrant us in giving the Governor any more time, as we feel that we have been very lenient with him as the principal as well as the interest is now long in arrears, we desire to have this matter immediately taken up and a settlement made."

After the receipt of this letter, Parr had a conversation with the plaintiff, Z. F. Moody, or his agent, M. A. Moody, concerning these overdue payments. Parr suggested to M. A. Moody that he should do something regarding the making of a payment on that account; that the company was insisting that he settle, and Parr said:

"Now, Mr. Moody, if you cannot pay $1,000 send $500. Make some kind of a payment so as to show that you are doing the best you can."

Moody then promised Parr that he would send $500 in a few days. Moody failed to keep this promise and defaulted in this payment, and afterwards being called up by telephone by Parr and asked the reason why he had not made the payment, Moody promised he would send the money. He failed to keep this promise and defaulted in the promised payment.

On July 2, 1906, he also defaulted in the payment of the interest then due amounting to $280.

It was provided in the contract that, if the plaintiff should make a default in any one or more of the sums of money agreed to be paid for a period of six months, the plaintiff would surrender the possession of the premises, and the defendant was empowered to take possession of the premises and terminate the contract. When the notice of August 11, 1906, was given, the plaintiff had been more than six months in default of all the principal sums agreed to be paid by the plaintiff. The contract was thereupon placed in the hands of the

defendant's attorneys, Huntington & Wilson, residing at The Dalles Or., who, on that date, wrote to the plaintiff the following letter:

"The Dalles, Oregon, Aug. 11, 1906.

"Hon. Z. F. Moody, Salem, Oregon—Dear Sir: We are directed and authorized by the Eastern Oregon Land Company, the party of the second part of that certain contract made and executed by you as party of the first part, bearing date January 2, 1902, to demand of you the surrender of possession of all the premises described in said contract; you are hereby notified that said Eastern Oregon Land Company terminates this contract by reason of your failure to make the payments which by said contract you agreed to make. You are now in default in the payments which you by said contract agreed to make, in the sum of seven thousand dollars and interest at the rate of eight per cent. per annum from January 2, 1902, and interest upon each semiannual payment of interest at the legal rate from the date such semiannual interest payment became due. We hereby notify you that unless you surrender possession of all of said premises on or before the 21st of August, 1906, or pay the entire amount now due upon said contract on or before said last-named date, we shall commence suit to foreclose your interest in and to said contract and said premises. The Eastern Oregon Land Company is now ready and willing and hereby offers to convey to you by warranty deed all of said tracts of land described in said conveyance upon the payment of the amount due from you upon said contract.

"Huntington & Wilson, Attorneys for Eastern Oregon Land Company."

On August 17, 1906, the defendant's attorneys sent the following letter to the plaintiff, correcting the former letter as to the date of the last default on account of the payment of interest, and referring to the payment of interest due July 2, 1906:

"The Dalles, Oregon, August 17, 1906.

"Hon. Z. F. Moody, Salem, Or.—Dear Sir: In our letter to you of the 11th we made an error in stating the amount of which you are in default on the contract referred to; we should have stated the default of interest from January 2, 1906, instead of January 2, 1902; Mr. Parr tells us that the interest has been paid now to July 2, 1906.

"Yours very truly,                              Huntington & Wilson."

On August 13, 1906, M. A. Moody, plaintiff's agent at The Dalles, mailed to Parr at Moro, Or., a check for $280 in payment of the interest due July 2, 1906. No payment was made or offered to be made of the interest from July 2, 1906, to August 13, 1906, and plaintiff made no reply to Huntington & Wilson's letter of August 11, 1906. On August 19th (?), the plaintiff mailed to Parr, as agent for the defendant, the following letter:

"Salem, August 14 (?), 1906.

"Mr. G. T. Parr, Dear Sir: I recd. note today from H. and W. stating that you had advised them that the interest was paid up to last July but did not say whether or not they were to give further time. Please advise me here and oblige,        Yours, etc.,                        Z. F. Moody."

In the record the above letter is dated August 14th. It is stated, however, that the date is uncertain on account of its illegibility. The defendant claims that the date is August 19, 1906. This is probably the correct date, as the letter refers to the preceding note from Huntington & Wilson, dated August 17th.

From the receipt of the letter of August 11, 1906, to October 22,

1906, neither the plaintiff nor his agent communicated in any way with the defendant's attorneys, Huntington & Wilson, into whose hands the defendant had placed the business of closing up or terminating the contract of January 2, 1906. Negotiations for extension of time for payments were, however, carried on by the plaintiff and his agent with Parr, at Moro, who had ceased to have charge of this business for the defendant. There is no claim that Parr had authority to extend the time of payment, or that he assumed to do so. He testified with respect to this matter as follows:

"Q. You may state whether or not at the time of the payment of the interest in December, 1905, or at any other time, you ever agreed with Mr. Moody that the time of payment of the overdue installments of principal should be extended. A. No, sir.

"Q. You may state whether or not you ever made any such promise or offer to Gov. Z. F. Moody. A. No, sir; I told him that I would submit the matter to the company and do what I could for him.

"Q. You may state whether or not the suggestion about the extension of time of payment of the principal was ever made by you, or was that made by Mr. Malcolm Moody? A. I always took the position of trying to collect the money.

"Q. That does not quite answer the question that I asked; state whether or not the suggestion about the extension of time came from you or from Mr. Moody. A. The requests for extension came from Mr. Moody."

Parr further testified that about the 15th of August he had a conversation with the plaintiff, in person, as follows:

"A. * * * He then informed me that he had received a letter from Huntington & Wilson demanding payment of the full amount, and that he was very much surprised that the company had taken that action. I told him at that time that I knew nothing about it whatever; that I had not been advised that they had taken steps to collect the amount. He wanted to know if I could not arrange with the company to accept $1,000 now and the balance the 1st of next January; that is, the balance January, 1907. I told him that I did not know, that I would try to get them, and that probably I could. That was practically all the conversation I had with the Governor."

Afterwards witness had a conversation with M. A. Moody. He testified with respect to that conversation as follows:

"A. Mr. M. A. Moody said, in substance, the same as his father, that the company had sent a letter through Huntington & Wilson demanding the full payment, or they would begin foreclosure proceedings within 10 days, and Mr. M. A. Moody at that time wanted to know if I could not arrange to have the company accept $1,000 and the balance the 1st of January. I told him that I did not know. He said, 'Cannot you send a telegram to San Francisco and find out?' I did not place very much importance to the situation, and I told him that I thought it would be best to wait until I returned from the Locks, when I would write to the company and explain fully and try and get the extension asked. * * *

"Q. During that conversation on the 17th—that is, the conversation that you had with him when you were on your way to the Locks—did you say to him that you would be satisfied if he would pay part of the principal? A. No, sir; I never took that responsibility upon myself. I told him that I would endeavor to have the company accept that and give him an extension until January, 1907."

M. A. Moody testified that on the 17th of August he had a conversation with Parr upon the subject; that Parr was apparently sur-

prised the defendant should have given plaintiff notice rescinding the contract. His testimony continues:

"A. As I said before, Mr. Parr seemed to me surprised that the company demanded the rescinding of the contract, and said that he was satisfied that they would be willing to accept a portion of the balance of the principal.

"Q. What did you answer? A. I told him that, since they had placed it in the hands of their attorney, I was afraid to make a partial payment; that I thought it would be better to pay it all."

From this testimony it appears that plaintiff abandoned negotiations for an extension of time on August 17th, and announced his purpose to pay the debt in full. Parr places his knowledge of plaintiff's change of purpose three days later. He testifies that about August 20th he had a conversation with M. A. Moody, as follows:

"He told me that he had decided to pay all cash. Said he would send me a draft the next day for the full amount, and wanted to know if I made the deeds, or if it was necessary to send them to San Francisco. He said, 'You go ahead and have the deed made out, and I will send you the draft to-morrow'—that is, the next day."

The draft was not sent, but on the following day, August 21st, Moody called up Parr on the telephone and said that he had not sent the draft, but requested Parr to forward the deed, make it out and forward it to San Francisco for execution, and send it to the First National Bank of the Dalles, or any other place that was satisfactory to Parr, and he would pay over the money. The deed was to be made to E. E. Ferguson. On the same day plaintiff by his agent wrote and sent to Parr the following letter:

"Z. F. Moody, General Commission Merchant,

"The Dalles, Or., Aug. 21, 1906.

"Geo. Parr, Agent E. O. L. Co., Moro, Or.—Dear Sir: Confirming our conversation by telephone to-day we will be ready to pay the balance due on the contract with your company made January 2, 1902, as soon as you can execute and deliver the deeds for the land according to the terms of the contract. Please make the deeds to E. E. Ferguson and notify me by return mail whether you prefer to receive the money and deliver the deeds here at The Dalles or at Moro. Yours truly, Z. F. Moody, pr. M. A. M."

This was the last day in which plaintiff had the right under the terms of the defendant's demand to pay the amount due on the contract, and obtain from the defendant a deed for the premises.

[1] The payment of the principal, sums due on the contract, and interest, and the strict performance by the plaintiff of all the covenants and agreements contained in the contract to be by the plaintiff kept and performed, were made conditions precedent to the said covenants, and time was declared to be the essence of the contract.

"Where a contract is thus conditional—that is, where it rests upon a condition precedent—until the performance of the condition it cannot be enforced, because, until that time, there is not true contract. * * * The fact that a contract depends upon a condition precedent, which has not yet been performed, is always a complete defense to a suit for its specific enforcement. Equity, therefore, never relieves against the nonperformance or breach of conditions precedent, since no estate vests, or right accrues, as long as the condition thus remains unperformed." Pomeroy on Contracts, § 334.

The payment of the amount due on the contract in this case was therefore a prerequisite to the vesting of any right in the plaintiff to a conveyance of the land described in the contract. No such payment was made, but it is claimed that a tender of payment was made by the plaintiff which was equivalent to a payment. A tender of payment to be the equivalent of a payment must be: ·

[2] 1. Unconditional.

In Loud v. Pomona Land & Water Co., 153 U. S. 564, 577, 14 Sup. Ct. 928, 38 L. Ed. 822, the Supreme Court of the United States had before it the question of whether the covenants of certain contracts for the sale of land, payable in installments, were dependent and concurrent, or independent, and the payment of the purchase price a condition precedent to the covenant of conveyance on the part of the land company that it would convey. The court held that, if the terms and provisions of the contracts were to be understood in their plain and obvious meaning, they clearly expressed the intention of the parties to be that the purchaser should first pay the purchase price of the lands contracted for before he was entitled to demand a conveyance therefor; that it was clear that the purchaser could not have legally demanded from the land company a deed or conveyance for the lands until after the purchase money had been fully paid; that the payment or tender of payment of the purchase price for the land was a condition precedent to the right to the conveyance. In support of this doctrine the court cites numerous authorities both in England and in this country.

In Kelsey v. Crowther, 162 U. S. 404, 408, 16 Sup. Ct. 808, 810 (40 L. Ed. 1017), the action was for the specific performance of a contract for the sale and purchase of land. The plaintiff had made a payment on the purchase price, and by a covenant in the agreement of sale had 30 days for the examination of a title. If the title was approved, defendant contracted that he would, at once, on payment of the balance of the agreed purchase money, execute and deliver a full and perfect warranty deed conveying to the purchasers the entire title to the premises. Defendant also agreed to at once furnish an abstract of title to the premises. Defendant failed to furnish the abstract of title; but, notwithstanding this fact, the plaintiff tendered to defendant the balance of the purchase price and demanded the conveyance of the property. The tender was, however, made on the next day after the period of 30 days had expired. The trial court entered a decree in favor of the defendant, denying the specific performance of the contract. The Supreme Court of the United States approved this decree, saying:

"His (defendant's) failure to furnish the abstract might have justified the complainants in declaring themselves off from the contract, and might have formed a successful defense to an action for damages brought by Crowther, (defendant). But if they (complainants) wished to specifically enforce the contract, it was necessary for the complainants themselves to tender performance. To entitle themselves to a decree for a specific performance of a contract to sell land it has always been held necessary that the purchasers should tender the purchase money."

In Kentucky Distilleries & Warehouse Co. v. Warwick, 109 Fed. 280, 283, 48 C. C. A. 363, the Circuit Court of Appeals for the Sixth Circuit, applying this doctrine in a similar case, held that a purchaser of real estate who is required by the contract to deposit the price with a third party by a day certain—time being of the essence of the contract—is bound to pay in or tender the money within the time stated to entitle him to enforce specific performance, notwithstanding the failure of the vendor to furnish an abstract of title within the time required by the contract.

In Englander v. Rogers, 41 Cal. 420, there was an action for the recovery of a deposit on the purchase price of real estate. The covenants of the vendor and vendee were mutual and dependent, and it was held that neither could put the other in default except by actually tendering a performance on his own part. The court says:

"To entitle the plaintiff to maintain the action on the contract set out in the complaint, he should have averred a tender of the unpaid portion of the purchase money, or some sufficient excuse for the omission to tender it. The only allegation of the complaint on this point is that the plaintiff 'has been ready and willing during all the time aforesaid, and has offered to accept and take the conveyance, pursuant to said agreement, and to pay the balance of said purchase money.' It is not an averment that he tendered the purchase money. To constitute a valid tender in such a case, the party must have the money at hand and immediately under his control, and must then and there not only be ready and willing but produce and offer to pay it to the other party on the performance by him of the requisite condition."

In Powell v. D. S., etc., R. R. Co., 12 Or. 488, 490, 8 Pac. 544, 546, it is said:

"A mere readiness to perform at such time is not sufficient, but the plaintiff must aver a tender of performance on his part."

In McCourt v. Johns, 33 Or. 561, 565, 53 Pac. 601, 602, Judge Wolverton, speaking for the court, said:

"The statute has provided that 'an offer in writing to pay a particular sum of money is, if not accepted, equivalent to an actual production and tender of the money'; but it was not the intention of the Legislature thereby to dispense with the readiness and ability on the part of the one making the tender to pay in substantial accord with its terms."

In the present case the plaintiff did not tender performance unconditionally but conditionally upon the delivery of a deed of conveyance. The terms of plaintiff's letter of August 21st were:

"We will be ready to pay the balance due on the contract with your company made January 2, 1902, as soon as you can execute and deliver the deeds for the land according to the terms of the contract."

This was not a notice that the plaintiff was then ready to pay the amount due, but that at a future time, and conditionally upon the delivery of the deed, he would be ready to pay the amount due.

[3] 2. A tender of payment, to be the equivalent of an actual production and tender of the money, must be made by one who has the present ability to make the tender good, and the burden of proof is upon the plaintiff to show that he has such ability.

The statute of Oregon providing for a tender in writing "does not

dispense with the necessity of the parties having the money in fact." Holladay v. Holladay, 13 Or. 523, 537, 11 Pac. 260, 266.

The plaintiff in this case was not himself a witness in the case, but it appears from a statement of his bank account that on August 21, 1906, his account in bank was overdrawn in the sum of $1,145.20, and that M. A. Moody, his son, had no account in bank. But the latter testified he had arranged to obtain the money from one Dr. E. E. Ferguson, to whom the title to the land was to be conveyed in the deed. Dr. Ferguson was a witness in the case. He testified that he loaned M. A. Moody $7,000. He gave the money in a check dated October 22, 1906, two months after the tender, and took Moody's note, dated back to August 21, 1906. From this testimony it appears that neither the plaintiff nor his agent had this money in hand on August 21st. They were therefore not able on that date to pay the amount due on this contract; but, even if this money had been available on this date, it would not have been sufficient to pay the amount due on the contract. The amount due on the contract on that date was $7,000 in principal and interest from July 6, 1906, to August 21, 1906, amounting to $76.21, making a total of $7,076.21. There is no testimony in this record that the plaintiff was ready and able to pay the full amount due on the contract at that time. The most that can be said of this evidence is that plaintiff knew where he could secure $7,000; but there is no evidence that the additional sum of $76.21 had been secured, or was ready to be paid with the principal sum.

In Lilienthal v. McCormick, 117 Fed. 89, 96, 54 C. C. A. 475, 482, the controversy as in this case arose in Oregon. There was an insufficient tender of payment upon a liability arising upon contract. Upon that subject this court said:

"There was no actual tender of any money. It is true that the statute of Oregon provides that an offer to pay a particular sum of money is, if not accepted, equivalent to the actual production and tender of the money: but the Supreme Court of that state have declared that this statute does not dispense with readiness and ability on the part of the person making the offer to pay the money at the time the offer is made. Ladd v. Mason, 10 Or. 308, 314. The evidence does not affirmatively show that the offer made covered the full amount then due. The law is well settled that there can be no valid tender of part of an entire debt. The mistake in the sum offered, if any, must be regarded as the mistake and misfortune of the defendants."

[4] 3. A tender of payment, to be the equivalent of an actual production and tender of the money, must be to pay a particular sum of money, which must be a sum that would be in full of all liability on the contract.

The statutes of Oregon make "an offer in writing to pay a particular sum," if not accepted, the equivalent to the actual production and tender of the money.

The tender in this case on August 21st was first by telephone by M. A. Moody to Parr requesting Parr to make out and forward the deeds to San Francisco for execution, and send it to the First National Bank of The Dalles, or any other place that was satisfactory to Parr, and they would pay the money. The second tender was by letter signed

by Z. F. Moody, by M. A. M., dated August 21st, confirming the telephone conversation of that day, and stating that:

"We will be ready to pay the balance due on the contract with your company made January 2, 1902, as soon as you can execute and deliver the deeds for the land according to the contract."

The tender was not to pay a particular sum of money, but the balance due on the contract. This was not sufficient. The tender is not sufficient unless it is of a specific amount and offered to be paid without annexing any terms or conditions. Pulsifer v. Shepard, 36 Ill. 531, 537. It follows that the tender was not sufficient to meet the terms of defendant's notice of August 11, 1906, and under that notice defendant was entitled to terminate the contract by reason of plaintiff's default in making the payments therein required.

On October 22, 1906, the plaintiff by letter addressed to defendant's attorneys, Huntington & Wilson, at The Dalles, Or., referred to their letter of August 11, 1906, demanding payment of $7,000 and interest under the contract of January 2, 1902. Plaintiff refers to his offer verbally and in writing that he was ready to pay the amount due on the contract upon the tender of a deed conveying to him the land referred to therein, and he states that on the 20th inst. he learned for the first time that the defendant had refused to comply with its contract and make the deed called for. The plaintiff thereupon tendered to the defendant company the sum of $7,000 and interest due on payments, $171.15, the sums due on said contract, and demanded from the defendant a warranty deed conveying to him the land described in the contract. The interest here tendered in addition to the principal sum was the interest from July 2 to October 22, 1906, and was in effect an admission that a tender of the interest due on August 21, 1906, of $76.21 was necessary to make good the tender of that date, assuming that the tender was otherwise sufficient. On the same day Huntington & Wilson admitted the tender mentioned in plaintiff's letter, but stated that they were not in a position to deliver such a deed. Thereupon plaintiff brought this action for a specific performance of the contract of January 2, 1902. In plaintiff's amended complaint and defendant's answer and in defendant's cross-bill and plaintiff's answer to the cross-bill the issues are presented substantially as have been stated, and the facts recited are, in substance, the material facts contained in the evidence.

The court below held, among other things, that the acceptance by the defendant on August 14 or 15, 1906, of the installment of interest due July 2, 1906, amounting to $280, waived the default in the payment of the principal sum then due, and directed a decree in favor of the plaintiff. Plaintiff's complaint for specific performance is not based upon the theory that defendant had waived plaintiff's default with respect to such payments. The complaint is formed wholly upon the theory that a sufficient tender of payment had been made to meet the terms of defendant's notice of August 11th, and the subsequent action taken by the plaintiff is consistent with that theory, and inconsistent with the theory that plaintiff understood that there was a waiver

of default on the part of the defendant by its acceptance of the interest due July 2, 1902. In plaintiff's letter to Parr of August 19th, he refers to the fact that plaintiff had received a note from Huntington & Wilson in which it was stated that Parr had advised them that interest had been paid up to July 2, 1906; but, says the plaintiff in his letter, they "did not say whether or not they were to give further time." This is absolutely inconsistent with the theory that plaintiff understood that defendant had waived plaintiff's default by the acceptance of interest. Neither the plaintiff nor his agent in any conversation with Parr indicated that either of them understood that defendant had waived default; on the contrary, their effort was first to secure an extension of time in making further payments, and, failing in that, their claim has been that a sufficient tender had been made.

[5] We do not understand how, upon the issues upon which the case was tried and the conduct of the plaintiff, he can now claim that the receipt of interest by the defendant was a waiver of the subsequent default in meeting the terms of defendant's notice.

In defendant's cross-bill it sets up its defense to the action, and then offers to repay to the plaintiff all moneys theretofore paid by him to the defendant on account of the contract, to wit, the sum of $4,-058.95, and prays the plaintiff's suit for a specific performance be dismissed, and that the contract of July 2, 1902, be canceled.

We are of opinion that such should be the order of the court, and that plaintiff should have leave to accept defendant's offer to repay the money plaintiff has paid to defendant on account of the contract.

The decree of the Circuit Court is, accordingly, reversed, with instructions to proceed in accordance with this opinion.

GILBERT, Circuit Judge (dissenting). There are certain salient facts in this case, which, it seems to me, present insuperable obstacles to the most inequitable result which will follow from the conclusion reached by the majority of this court:

The contract, while it makes time of the essence thereof, contains no provision that failure to make payments, either of principal or interest when due, shall work a forfeiture or be ground for rescission. All that is prescribed as the penalty for default is that, in case the purchaser shall make default in the payment of any one or more of the sums of money therein agreed to be paid *"for a period of six months,"* the purchaser shall surrender the possession of the premises to the vendor, and the latter may take possession of the same and terminate the contract.

The delays in payments of principal and interest prior to August 11, 1906, have absolutely nothing to do with the decision of the case on its merits, further than to define the attitude of the parties to the contract on and after August 11th, for those delays were fully acquiesced in and waived by the vendor. It accepted all semiannual payments of interest, whether they were made before, at, or after the time when they fell due, and it accepted accrued interest on all delayed payments, and it assented to the request of the purchaser that the payment of installments of principal should be deferred until it

should be convenient to him "to meet the obligations." This is shown by the letter of August 25, 1904, written by Parr, the agent of the appellant, in which he said:

"The company wrote us a letter a few days since requesting to be advised regarding the arrangements made with you for extension of time on payments due on contract for the purchase of land. We replied that we had extended the time until it would be more convenient for yourself to meet the obligations. In replying to this letter the company sanctioned our actions in the matter, but stated that they preferred to have the interest paid semiannually as provided for in the agreement. We would therefore thank you to comply with this part of the contract, and we will carry the payments along until such times as the company demands that collections be made."

"Whether time is or is not of the essence of the contract, if the vendor has waived strict compliance with its terms as regards time of payment, he cannot thereafter rescind or forfeit the contract without notifying the purchaser of his intention to do so unless payment is made, and allowing him a reasonable time for performance." 39 Cyc. 1384; Maffett v. Or. & Cal. R. Co., 46 Or. 443, 456, 80 Pac. 489; Watson v. White, 152 Ill. 364, 38 N. E. 902; Monson v. Bragdon, 159 Ill. 61, 42 N. E. 383; Whiting v. Doughton, 31 Wash. 327, 71 Pac. 1026; Douglas v. Hanbury, 56 Wash. 63, 104 Pac. 1110, 134 Am. St. Rep. 1096; Boone v. Templeman, 158 Cal. 290, 110 Pac. 947, 139 Am. St. Rep. 126; Mo v. Bettner, 68 Minn. 179, 70 N. W. 1076; O'Connor v. Hughes, 35 Minn. 446, 29 N. W. 152.

The decision of the case on its merits depends, therefore, on what occurred on and after August 11, 1906. On that day the interest had been paid to January 2, 1906. The semiannual installment of interest due on July 2, 1906, was still unpaid, and there was unpaid on account of principal, $7,000. On that date, Huntington & Wilson, attorneys for the appellant, wrote to the appellee, demanding that he surrender possession of the lands described in the contract, and notifying him that the appellant—

"terminates this contract by reason of your failure to make the payments which by said contract you agreed to make. * * * We hereby notify you that unless you surrender possession of all of said premises on or before the 21st of August, 1906, or pay the entire amount now due upon said contract on or before said last-named date, we shall commence suit to foreclose your interest in and to said contract, and said premises. The Eastern Oregon Land Company is now ready and willing, and hereby offers to convey to you by warranty deed, all of said tracts of land described in said conveyance upon the payment of the amount due from you upon said contract."

It is to be observed that this is not a notice of a rescission of the contract. It is notice that, unless payment is made on or before the date named, the appellant will sue to foreclose the appellee's interest in the contract. It is well setted that a notice of a rescission must be absolute, and wholly inconsistent with a further recognition of the binding force of the contract.

"No particular form of notice is necessary unless prescribed by the contract or by some statutory provision. However, the notice should be clear and unambiguous, and convey an unmistakable purpose to rescind or forfeit the contract." 39 Cyc. 1386.

But assuming the communication to have been a distinct notice of rescission unless the contract were performed within the ten days therein limited, the facts show that it was never rescinded. On August 13, 1906, two days after the date of the notice, the appellee paid

the installment of interest which fell due on July 2, 1906, and the appellant accepted and received the same. On August 17, 1906, the appellee's agent had a conversation with Parr, the agent of the appellant, in which the latter said that he was satisfied that the company would be willing to accept a portion of the balance of the principal, but the appellee's agent answered that, since the matter had been placed in the hands of attorneys, he was afraid to make a partial payment; that he would let him know the following day whether he would pay a portion of the balance or pay it all. On the following day he told the appellant's agent that he had decided to pay it all. The latter said it would be satisfactory, and that he would send for the deed.

In the transactions between the parties on and after August 11, 1906, there are to be found two sufficient reasons why in equity the decree of the court below should be affirmed. In the first place, the appellant, by its conduct and by the letter of its attorneys of August 11, 1906, waived all prior defaults in payment, whether of principal or of interest, and extended the time of the contract to and including August 21st, with an express offer to convey the land to the appellee on his payment of the balance due at that time. By the terms of the contract all the payments might be made to the appellant "at its agency at The Dalles," and in pursuance of that provision, which was in no way altered by the notice of August 11th, Malcolm A. Moody, the son of the appellee, and acting as manager of his affairs, on August 21st addressed the agent, both orally and in writing, informing him that the money was ready to be paid, and in answer thereto the agent informed him that he would order the deed and would notify the attorneys, and the agent made no objection to receiving the money due on the contract or to making the deed. The testimony of Malcolm A. Moody that on August 21, 1906, he had the money available with which to pay what was due on the land, should be accepted as true. The objection is made that his testimony shows the availability of only $7,000, which was to be advanced by Dr. Ferguson, and that there is no proof that Moody had the additional $76.21. But it ought to be assumed that one who has $7,000 to pay on the purchase of land, and is himself engaged in business, has also at his command, as he testified that he had, the additional $76.21, just as it should be assumed that, if he proved that he had $7,076, he had also the additional sum of 21 cents.

No answer was made to the appellee's offers to pay by the appellant, then or at any time, and, in fact, it is evident that it was not its intention to make a conveyance to the appellee at any time after the date of the letter of August 11th, and that the offer of conveyance contained in that letter was not made in good faith. The appellant not being prepared to convey, any further tender by the appellee would have been futile.

"If for any reason, a tender would be only an idle or useless ceremony, no tender is necessary." Am. & Eng. Encl. (2d Ed.) 692.

The offer of the appellee to pay on August 21st was by the appellant's agent accepted as sufficient, and he stated that he would procure the deed.

"Unless the objection to the sufficiency of the tender is made at the time of the tender, such objection is considered to be waived." 39 Cyc. 1549.

"A tender of the purchase money, however, in connection with mutual and concurrent promises by the vendor, means merely a readiness and willingness, accompanied by an ability to produce the money, provided the vendor will concurrently do the act which is required of him." 39 Cyc. 1563; Scanlan v. Geddes, 112 Mass. 15; Miller v. Smith, 140 Mich. 524, 103 N. W. 872; Clark v. Weis, 87 Ill. 438, 29 Am. Rep. 60; Smoot et al. v. Rea & Andrews, 19 Md. 398; Warren v. Crew, 22 Iowa, 315; Comstock v. Lager, 78 Mo. App. 390.

In the case last cited the court said:

"The word 'tender,' as used in connection with mutual and concurrent promises, does not mean the same kind of an offer as when used in reference to the payment or offer to pay an ordinary debt due in money, when the money is offered to a creditor who is entitled to receive it, and nothing further remains to be done, and the transaction is completed and ended; but it only means a readiness and willingness, accompanied with the ability on the part of one of the parties, to do the acts which the agreement requires him to perform, provided the other will concurrently do the things which he is required by it to do, and a notice by the former to the latter of such readiness and ability implies an offer or tender in the sense in which these words are used in reference to mutual and concurrent undertakings. It is not an absolute and unconditional agreement to do or transfer anything at all events, but it is in its nature conditional only, and dependent on, and to be performed only in case of, the readiness of the other party to perform his part of the agreement."

Said the court in Smoot et al. v. Rea & Andrews:

"To entitle a purchaser to demand a deed, it is sufficient that he is ready, and offers to comply with the contract on his part, and has the ability to perform it."

On August 21, 1906, after receiving the offers of the appellee to pay the purchase money in full, Parr wrote a letter to the secretary of the appellant, which he signed "Eastern Oregon Land Company, by George T. Parr, Agent," in which he said that he had met Mr. Moody at The Dalles, "and he informed me that he was ready and willing to pay the balance due on his contract upon delivery of a warranty deed covering the land embraced in the contract. I then conferred with Messrs. Huntington & Wilson, and they advised that under the laws of the state of Oregon we could not refuse deed if Mr. Moody was ready to pay over the balance due, with interest. They have no doubt already written you explaining the laws governing such matters in this state. We have, accordingly, in compliance with the request of Mr. Moody, prepared and herewith inclose warranty deed," etc. It thus distinctly appears that the appellant's agent made no question of the readiness and ability of the appellee to make the payment. The offer of payment was not accepted for the sole reason that the appellant was not prepared to deliver the deed. I think there can be no question that the advice so given by the appellant's attorneys to the appellant's agent correctly stated the law of the case. The evidence is undisputed that the appellant never tendered the deed, or executed the same, and it was not until October 20, 1906, and after several letters had passed between the parties, that the appellant made known to the appellee its refusal to carry out the contract.

The conclusion which is reached by the majority of this court seems to be based mainly upon the decisions in Kelsey v. Crowther, 162 U. S. 404, 16 Sup. Ct. 808, 40 L. Ed. 1017; Kentucky Distillery & Warehouse Co. v. Warwick, 109 Fed. 280, 48 C. C. A. 363; and Loud v. Pomona Land & Water Co., 153 U. S. 564, 14 Sup. Ct. 928, 38 L. Ed. 822. Kelsey v. Crowther goes no further than to hold that one who brings a suit for specific performance must allege an actual tender of the purchase price. That proposition is not involved in the present case, for it is not disputed that the appellee made a good and legal tender on October 22, 1906. The decision of the case wholly depends on the question whether, prior to that time, the contract had been rescinded, and it is the question whether, upon the facts established, the appellant could rescind without tendering a deed, that we have to deal with. The conditions of the contract for conveyance and payment so extended by the letter of August 11th were concurrent and dependent, and there could be no rescission unless, upon the offer of the appellee to pay the purchase money within the time stipulated, the appellant tendered a conveyance in accordance with its notice. In that respect the case differs from Kentucky Distillery & Warehouse Co. v. Warwick and Loud v. Pomona Land & Water Co. In the first of those cases the conditions were held not concurrent for the reason that the contract required that the purchaser deposit the purchase price with a third party on a day certain as a condition to the conveyance. In the second case the conditions were held not concurrent for the reason that the contract provided that:

"*After* the making of the payment and full performance of the covenants hereafter to be made and performed by the party of the second part, the party of the first part will, in consideration thereof, convey."

And the court based its decision on the use of the word "after," which word is italicized in the opinion.

The provision of the contract in the case at bar is that:

"The party of the second part covenants and agrees that, *upon* the payment of said sums and interest, it will convey," etc.

Such a covenant is concurrent with the covenant to pay the purchase price, and it is uniformly so held. Robinson v. Harbour, 42 Miss. 795, 97 Am. Dec. 501, 2 Am. Rep. 671; Shinn v. Roberts, 20 N. J. Law, 435, 43 Am. Dec. 636; Ink v. Rohrig, 23 S. D. 548, 122 N. W. 594; Stein v. Waddell, 37 Wash. 634, 80 Pac. 184. Such also have been the decisions of the Supreme Court of Oregon, the state within which lie the lands in controversy in this suit, and in which the contract was to be performed. Frink v. Thomas, 20 Or. 265, 25 Pac. 717, 12 L. R. A. 239; Ward v. Warren, 44 Or. 102, 74 Pac. 482; Scott v. Smith, 58 Or. 591, 115 Pac. 969. A contract precisely similar to that which is here involved was construed in Stein v. Waddell, 37 Wash. 634, 80 Pac. 184, in which Judge Rudkin for the court said:

"It is first claimed that the covenants in this agreement are independent. A court will not readily presume that a vendor intends to part with his title without receiving the purchase price, or that the purchaser intends to part with his purchase money without receiving a deed. In other words, a covenant to convey and a covenant to pay the purchase price will be held to be

concurrent and be dependent unless the contrary clearly appears to have been the intention of the parties, and the use of the words 'shall first pay,' as in this case, has no particular significance."

In Bank of Columbia v. Hagner, 1 Pet. 455, 7 L. Ed. 219, it was held that:

"In contracts for the sale of land by which one agrees to purchase, and the other to convey, the undertakings of the respective parties are always dependent unless a contrary intention clearly appears."

"In order to enable the vendor to rescind on account of default of the purchaser, he must perform all precedent covenants on his part to be performed, and must be ready and willing to perform concurrent covenants, and must notify the purchaser that he is ready and willing to perform the concurrent covenants." 39 Cyc. 1375.

"If the covenants of the vendor to convey and the purchaser to pay purchase money * * * are mutual and dependent, the vendor must at law convey, or tender a proper conveyance before he can put the purchaser in default and thereby become entitled to rescind." 39 Cyc. 1537.

And the same rule applies to suits in equity. Scott v. Smith, 58 Or. 591, 115 Pac. 969; Lewis v. Wellard, 62 Wash. 590, 114 Pac. 455; Stein v. Waddell, 37 Wash. 634, 80 Pac. 184; Boone v. Templeman, 158 Cal. 290, 110 Pac. 947, 139 Am. St. Rep. 126; Roberts v. Braffett, 33 Utah, 51, 92 Pac. 789; Spolek v. Hatch, 21 S. D. 386, 113 N. W. 75. In Scott v. Smith, Mr. Justice Bean said:

"As a general rule, the party who asks for the rescission of a contract for the sale of real estate must be himself without fault, and when, as in this case, the payment of the purchase money and the making or tender of the deed are to occur simultaneously, they are regarded as mutual and concurrent acts, which disable either party from putting an end to the contract without performance or a valid offer to perform on his part; and, so far as the question of time is concerned, both parties, after the day provided for the consummation, may be considered equally in default, and neither can hold himself discharged from the obligation of complete performance until he has tendered performance on his own side and demanded it on the other."

In Lewis v. Wellard, construing a contract between a vendor and a purchaser which provided, "This contract can be declared void by the first party (vendor) if second party violates any of the above agreements," the Supreme Court of Washington said:

"The contract made the making of the last payment and the delivery of the deed mutual, concurrent, and dependent obligations, and brings the case within the rule uniformly adopted by this court that, where obligations of such a character exist, neither party can put the other in default or claim a forfeiture without first tendering performance on his part."

In Boone v. Templeman, the court said:

"Where, in a contract for the sale of land, the price is made payable in installments due at different times, and the deed is to be made when the whole is paid, the vendor may, upon failure to pay any intermediate installment, forthwith sue for its recovery. But if he allows the whole to become due, the payment of the price then becomes a dependent and concurrent condition. Nonpayment alone does not put the vendee in default. The vendor must tender a deed as a condition to demanding payment of the price, and he cannot, without such tender, declare a forfeiture or maintain a suit either for the whole price or for an intermediate installment."

In Roberts v. Braffett, it was said:

"So, too, when time is of the essence, yet if neither party has exercised his right to declare an end to the contract, or where the one party has remained silent and inactive, or has otherwise done something amounting to a waiver, or has treated the contract as still subsisting, he cannot, when the stipulations of the contract are mutually dependent and concurrent, legally place the other party in default until he himself has tendered performance or offer to perform. In such cases, in order that he may terminate the contract, the vendor must make tender or offer of a deed."

In Spolek v. Hatch, in a suit in equity brought to declare a forfeiture of a contract for the sale of real estate, the court held that:

"Where a vendor, in a contract for the sale of real estate which made time of the essence, consents to an extension of time for the payment of the balance due, he can maintain no action thereon without tendering the deed or demanding payment."

In the second place, I think the court below was correct in finding the equities to be with the appellee on the further and distinct ground that the acceptance and retention by the appellant of the installment of $280 interest which was paid on August 13th was a waiver of the notice which had been given on August 11th and that thereafter, before there could be a rescission of the contract, a further notice was necessary. It is no answer to this to say that Parr, who received the money as the agent of the appellant, was not authorized to receive it. Nor is it material that he and the appellee were, on the day that the money was paid, ignorant of the notice which had been given two days before. The controlling fact is that the money was forwarded to the appellant's office at San Francisco, and that its officers knew of its receipt, and made no offer to return it to the appellee, and did not repudiate the action of their agent. That in fact their agent had, on August 13th, the authority to receive the payment, is implied in the dispatch which they thereafter sent him, of date August 20th, saying:

"Consult Huntington & Wilson before accepting principal or interest from Moody."

The acceptance of a payment on account of interest was wholly inconsistent with an intention to rescind the contract under the notice of August 11th. It was an acknowledgment of the continued existence of the contract. It was the acceptance of a benefit thereunder—the acceptance of an installment, in disaffirmance of a prior notice that had called for the payment of the whole sum due.

"Although time is of the essence of the contract, continued recognition of the contract by the vendor as still binding after default in respect of the provisions for payment of the purchase money is a waiver of the right to rescind or forfeit the contract on that ground." 39 Cyc. 1394.

"Where there are conditions in a contract for the sale of real estate, making time the essence of the contract and providing for a forfeiture in case of default, any acceptance of part payment on the contract is a waiver of the conditions as to all defaults then existing." Paulman v. Cheny, 18 Neb. 392, 25 N. W. 495.

It is wholly immaterial whether or not the appellee so understood the legal effect of this payment, and its acceptance by the appellant, or

thereafter regarded the notice of August 11th as still in force. The question is not what the appellee thought, but what was the legal effect of the act.

There was nothing therefore in the way to prevent a legal tender after August 21st, and such a tender was made by the appellee on October 22, 1906, which was acknowledged by Huntington & Wilson in the letter which they wrote to the appellee, saying:

"Your letter of October 22, 1906, has been handed to us by Mr. M. A. Moody, who has tendered us for you $7,171.15 as the amount due upon the contract between yourself and the Eastern Oregon Land Company of date January 2, 1902. We admit that Mr. M. A. Moody on your behalf has demanded from us a deed under the terms of that contract. We are not in a position to deliver such deed. The above tender and demand were made on this date."

As the court below correctly said:

"The equities are with the complainant. The defendant has received its interest upon all deferred payments, and the entire balance due was tendered, so that it is losing nothing by its bargain. It is only just that the complainant should get the land."